NO. 07-02-0210-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JANUARY 16, 2004

_____

JIMMY MAY, APPELLANT

V.

BARTON'S PUMP SERVICE, INC., APPELLEE

_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2000-510,319; HONORABLE J. BLAIR CHERRY, JUDGE

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

**OPINION**

Jimmy May appeals from a judgment against him for the amount due on a contract for services and materials. By 11 issues he challenges the (1) legal and factual sufficiency of the evidence, (2) trial court's refusal to allow an expert witness to testify and (3) trial court's refusal to submit a proposed jury instruction. We affirm.

BACKGROUND

In 1999 and for some years prior to that time, appellant Jimmy May owned approximately 68.49 acres of land southwest of the City of Lubbock. He formulated a plan to subdivide the acreage into commercial and residential lots and sell them. As part of his development plan, May sought to convert an old irrigation well on the property to a water source for a privately owned public water supply system (the water system) which would serve the subdivision lots. May was a professional engineer and developed a plan for the water system which he submitted to the Texas Natural Resource Conservation Commission (TNRCC) for approval. He also took a copy of his water system drawing to appellee Barton's Pump Service, Inc. May and Dale Barton, one of the principal owners of Barton's, agreed that Barton's would perform work on the irrigation well which Barton's did. The result was not to May's satisfaction and May did not pay Barton's bill.

May sued Barton's alleging various theories of liability, including violation of the Texas Deceptive Trade Practices Act,[1] breach of contract, breach of implied warranty of good workmanship, negligent misrepresentation and negligence. The bases for May's claims were that after Barton's worked on the well, the well did not comply with TNRCC requirements for a public water supply system, the well was damaged and the well's water production was severely decreased.

Barton's denied liability and counterclaimed to recover its unpaid bill.

---

[1]TEX. BUS. & COMM. CODE ANN. § 17.45 *et.seq.* (Vernon 2002). Reference to a provision of the Code hereafter will be by reference to "the deceptive trade practices act" or "TB&CC § _."

The evidence conflicted sharply as to what May and Dale Barton agreed to. May contended that the agreement was for Barton's to (1) modify the irrigation well in accordance with May's schematic drawing, (2) bring the well into compliance with TNRCC regulations, and (3) concrete the outside of the 16" well casing from the surface to the top of the water bearing formation. If Barton's had done so as agreed, May contended, the amount of water produced by the well would not have been reduced and the well would have supplied May's planned privately-owned public water system.

Barton's maintained that it properly performed the work it agreed to do and for which it billed May. Barton's denied that it agreed to perform work as contended by May, including bringing the well into compliance with TNRCC regulations. Barton's asserted that it agreed to do the work described in a written estimate dated December 27, 1999. That work only included inserting an 8" PVC liner inside the existing 16" well casing, placing gravel between the liner and the 16" casing, and placing a concrete cap on the well site.

May's modification plan did not include inserting a liner into the existing well casing, placing gravel inside the existing casing, and merely placing a concrete cap on the well at the surface.

The case was submitted to a jury by 18 questions. The jury effectively found that May and Dale Barton agreed as Barton's contended, and not as May contended. By its answers to Jury Questions, the jury failed to find that Barton's: (Question 1) engaged in a misleading or deceptive act or practice on which May relied to May's damage; (Question 2) engaged in an unconscionable action or course of action which was a producing cause

3

of damages to May; (Question 3) failed to comply with a warranty which was a producing cause of damages to May; (Question 5) agreed with May that Barton's would follow May's drawing, bring the well into compliance with TNRCC regulations and concrete the outside of the 16" well casing from the surface to the top of the water bearing formation; (Question 15) made a negligent misrepresentation on which May justifiably relied; and (Question 16) actions were negligence and a proximate cause of the damages. In response to other questions, the jury found (Question 10) Barton's and May agreed that Barton's would do work on May's well as described in Barton's estimate dated December 27, 1999 and that May would pay the reasonable charges for such work; (Question 11) May failed to comply with the agreement referenced in Question 10; (Question 13) Barton's damages were $5,533.83; (Question 14) attorney's fees for Barton's were $23,000 for preparation and trial, $7,500 for appeal to the Court of Appeals and $5,000 for appeal to the Supreme Court of Texas; and (Question 16) May's negligence was a proximate cause of the damages. The jury also failed to find that May's failure to comply with the agreement between Barton's and May was excused (Question 12).

May challenges (1) the factual sufficiency of the evidence to support the jury's answers against him on his theories of liability and contractual excuse (Questions 1,2,3,5,12,15,16); (2) both the legal and factual sufficiency of the evidence to support the jury's answers in favor of Barton's theory of liability (Questions 10,11,16); (3) the legal and factual sufficiency of the evidence as to Barton's attorney's fees for appeal to the Court of Appeals and the Supreme Court of Texas (Question 14); (4) the trial court's exclusion of May's expert witness Tucker Rudder; and (5) the trial court's refusal to submit a proposed

4

instruction as to excuse for May's failure to comply with the agreement submitted via Question 10.

We will address the issues, in general, as they are grouped by May.

ISSUES ONE, TWO AND THREE -

FACTUAL INSUFFICIENCY

Issues one, two and three assert that the jury's negative answers to certain of the Jury Questions on which May had the burden of proof are against the great weight and preponderance of the evidence. Issue one challenges the jury's refusal to find, in response to Questions 1, 2 and 3 that Barton's violated the deceptive trade practices act. Issue two addresses the jury's negative answer to Question 12, which presented May's position that Barton's made a false representation to induce May to enter into an agreement in the first instance. Issue three presents the same assertion to the jury's failure to find, in response to Question 15, that Barton's made a negligent misrepresentation. Such challenges are factual sufficiency challenges to adverse jury answers to questions on which the challenging party had the burden of proof. See Chang v. Nguyen, 76 S.W.3d 635, 637 n.1 (Tex.App.--Houston (14th Dist.) 2002, no pet.); W. Wendell Hall, *Standards of Review in Texas*, 29 St. Mary's L.J. 351, 487 (1998).

When considering factual sufficiency challenges to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just evidence which supports the verdict. See Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998); Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Lofton v. Texas Brine Corp., 720 S.W.2d 804,

5

805 (Tex. 1986). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. See Maritime Overseas Corp., 971 S.W.2d at 407; Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The factfinder may believe one witness and disbelieve another, and resolves inconsistencies in testimony. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). Where enough evidence is before the factfinder that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the factfinder. See Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988). When the jury did not find a fact based upon a preponderance of the evidence, we may not reverse merely because we conclude that the evidence preponderates toward a different answer. Id.

In arguing his issues, May recites substantial direct and circumstantial evidence both affirmatively supporting his position and impeaching Barton's position. Barton's references similar types of evidence that support Barton's position that Dale Barton did not make the misrepresentations alleged by May.

In order to reach a verdict, the jury had to reconcile the numerous significant direct conflicts in evidence. Assuming, *arguendo*, that May's contentions and conclusions seem more probable than those advanced by Barton's and found by the jury, we are

6

unauthorized to overturn a jury verdict so dependent on the jury's resolution of credibility of the witnesses and conflicting evidence as is this verdict. See id. We overrule May's issues one, two and three.

## ISSUES FOUR, FIVE AND SIX:
## EVIDENTIARY SUPPORT FOR THE CONTRACTUAL FINDINGS

Issue five urges a factual sufficiency challenge to the jury's negative finding on the question submitting May's version of the agreement reached by May and Barton's (Question 5). Issue four challenges the legal and factual evidentiary support for the jury's finding that the agreement reached between May and Barton's was the agreement testified to by Dale Barton (Question 10). Issue six asserts both legal and factual sufficiency challenges to the jury's finding that May failed to comply with the agreement the jury found had been reached between May and Barton's (Question 11).

When both legal and factual sufficiency issues are raised, we review the legal sufficiency point first to determine whether there is any probative evidence to support the jury's verdict. See Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981). In conducting a review for legal sufficiency, we consider the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. See Lee Lewis Const., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001); Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001). If more than a scintilla of evidence exists, the evidence is legally sufficient. Lee Lewis Constr., Inc., 70 S.W.3d at 782. More

7

than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. Id. at 782-83.

We have set out the standard of review for factual sufficiency issues in our consideration of May's issues one, two and three.

In advancing issue five, May cites evidence that his version of the agreement, as submitted in Jury Question five, was supported by a detailed drawing, was specific as to terms, and was more in agreement with the physical evidence at the well site than was the agreement Barton's claimed. May points out that the agreement Barton's claimed existed, as submitted in Jury Question ten, was based on a written estimate which did not contain all the terms Dale Barton testified to, but which merely set out prices for gravel, pipe and concrete. May also directs our attention to Dale Barton's testimony to the effect that May reputedly told Dale Barton to "Just do the best you can.", and "Well, let's try it.", in response to Dale Barton's statement that reworking an old irrigation well such as the one in question was a difficult proposition, and that Dale Barton proposed reworking the well by a process of inserting an 8" pipe into the 16" casing and putting gravel between the 8" pipe and the 16" casing. May further urges that whether he received a copy of Barton's written estimate, and if so, when, was a hotly disputed matter.

Barton's asserts that the above-referenced statements by May were in the context of responses to Dale Barton's having told May that the design presented by May was flawed, and that Dale Barton's alternative as represented by the written estimate was a counter-offer. Barton's posits that May's statements were actually the acceptance of

8

Barton's counter-offer and thus evidenced the necessary "meeting of the minds" for an agreement.

As we have referenced in our discussion of May's first three issues, the jury had before it testimony and other evidence of communications between the parties and actions of the parties in connection with those communications. The jury was instructed that such evidence could be considered in deciding if the parties reached an agreement. The jury was further instructed that in order for the parties to form a binding contract, the parties must have had a mutual assent or "meeting of the minds" on the essential terms of the contract. See Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex.App.--San Antonio 1999, pet. denied).

Dale Barton's testimony and the December 27th written estimate are legally and factually sufficient evidence to support the jury's finding in response to Question 10 that the agreement between May and Barton's was as urged by Barton's. See Lee Lewis Const., Inc., 70 S.W.3d at 782-83; Herbert, 754 S.W.2d at 144.

Moreover, although Dale Barton's testimony as to his rejection of May's proposed manner of reworking the well and Barton's counteroffer as expressed in the written estimate may not have been as detailed, clear and free from inconsistencies as May's testimony, the jury's refusal to find that Barton's agreed to the contractual terms advanced by May and presented in Question 5 was not so against the great weight and preponderance of the evidence as to warrant reversal. See Maritime Overseas Corp., 971 S.W.2d at 407.

Lastly, May does not dispute that he did not pay Barton's for the work on the well; his position was and is that he did not owe for the work because the work Barton's performed was not the work May agreed on. The jury's finding that May failed to comply with Barton's version of the agreement, which the jury found May agreed to, was consistent with its other answers in favor of Barton's position and adverse to May's position. The evidence, part of which we have previously noted, is both legally and factually sufficient to support the jury's answer to Question 11.

We overrule issues four, five and six.

ISSUES SEVEN AND EIGHT: NEGLIGENCE

May's issues seven and eight challenge the jury's answer to Question 16 which asked if the negligence of May or Barton's proximately caused "the damages." The jury answered "Yes" as to May and "No" as to Barton's. May argues via issue seven that the "Yes" answer was based on legally and factually insufficient evidence, and via issue eight that the "No" answer was based on factually insufficient evidence.

Barton's responds, in part, to issue seven, that regardless of the evidentiary support for the finding that May was negligent, the finding was not material because the jury failed to find Barton's negligent, and because even if the jury had found that May was not negligent, the judgment would not have been different. As to issue eight, Barton's urges, in part, that Barton's did not breach a duty to May.

10

We first address issue eight. May bases his argument on Barton's lack of familiarity with TNRCC regulations and evidence that the well as reworked by Barton's failed to meet TNRCC regulations for use as a public water supply. He urges that the failure of Barton's to bring the well into compliance with TNRCC regulations was failure to meet the standard of care for "an ordinary prudent operator [sic] such as himself."

The elements of a negligence cause of action are: (1) a legal duty; (2) breach of that duty; and (3) damages proximately resulting from the breach. See Van Horn v. Chambers, 970 S.W.2d 542, 544 (Tex. 1998). Because of May's claim that Barton's was negligent, it was incumbent on May to prove the existence and violation of a duty owed to him by Barton's. See El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987). If no duty existed, there could be no negligence. See Van Horn, 970 S.W.2d at 544.

May does not claim that Barton's owed a duty to him other than a duty which arose from the agreement between them. By its answer to Question 5, the jury failed to find that Barton's agreed to bring the well into compliance with TNRCC regulations. The agreement which the jury found in response to Question 10 (Barton's version of the agreement) did not include an undertaking by Barton's to bring the well into compliance with TNRCC regulations. We have determined that the jury's answers to both questions were supported by sufficient evidence.

The jury's answers do not establish that Barton's owed a duty to May to bring the well into compliance with TNRCC regulations. Thus, we agree with Barton's that it breached no duty to May. See id.

11

We overrule issue eight. Our conclusions as to issue eight and May's other issues pretermits any necessity for us to consider May's issue seven because even if we sustained the issue, the judgment would not be affected. See Tex. R. App. P. 47.1.[2]

## ISSUE NINE: ATTORNEY'S FEES

May's ninth issue challenges the legal and factual sufficiency of the evidence to support the jury's finding of appellate attorney's fees for Barton's. In presenting the issue, May references testimony of Barton's attorney which included an opinion only as to attorney's fees for preparation and trial. Barton's, however, counters by referring to testimony of May's attorney which included opinions that (1) $7,500 would be a reasonable and necessary attorney's fee for an appeal to the Court of Appeals, and (2) $5,000 would be reasonable and necessary attorney's fees for an appeal to the Supreme Court of Texas.

May does not urge that the trial court was requested to, or did, in any manner limit the jury's consideration of his attorney's testimony. See Tex. R. Evid. 105(a). Accordingly, the evidence was before the jury for all purposes. See Birchfield v. Texarkana Mem'l. Hosp., 747 S.W.2d 361, 365, 366 (Tex. 1987); In re K.S., 76 S.W.3d 36, 39 (Tex.App.--Amarillo 2002, no pet.). And, under this record, the testimony is sufficient evidentiary basis, both legally and factually, to support a finding of appellate attorney's fees for either party for an appeal from the trial court's judgment. See Lee Lewis Const., Inc., 70 S.W.3d at 782-83; Herbert, 754 S.W.2d at 144. Issue nine is overruled.

---

[2]Further reference to a rule of appellate procedure shall be by reference to "TRAP ____."

12

ISSUE TEN: EXCLUSION OF EXPERT
TESTIMONY

Issue ten asserts error by the trial court's exclusion of testimony by Tucker Rudder, a witness May called. May's attorney advised the trial court that Rudder would testify to TNRCC requirements, Rudder's familiarity with such requirements, what Rudder would have done had he been contacted as a driller to rework the well in question, why the well produced the way it had, and the feasibility of drilling other wells in the area.

Barton's objected on the basis that Rudder was not qualified to give an opinion on bringing old irrigation wells up to TNRCC standards or the proper method for doing so. See Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713 (Tex. 1998). The trial court held a hearing outside the jury's presence to determine the objection. During the hearing, Rudder testified to having considerable experience as a licensed water well driller. He was familiar with TNRCC regulations, but not with standards of the American Water Works Association, which were referenced by the TNRCC regulations. He had not reworked an "old" irrigation well to convert it to a well complying with TNRCC regulations for use as a public water supply.

The court sustained Barton's objection. May urges that Rudder was qualified to give testimony on several facets of the matters at issue, but attributes harm to the exclusion of Rudder's testimony only because the ruling prevented the jury from hearing qualified expert testimony that Barton's failed to use ordinary care in attempting to bring the well into compliance with TNRCC regulations.

Reversal of a judgment for an error in the exclusion of evidence is warranted if the error probably caused the rendition of an improper judgment, or probably prevented the appellant from properly presenting the case to the court of appeals. TRAP 44.1. A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. See City of Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1995). The entire record must be reviewed to determine whether the case turns on the excluded evidence. Id. We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. See Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).

We have previously determined, in considering May's issue eight, that the evidence and jury answers to Questions 5 and 10 failed to establish Barton's undertook to bring the well into compliance with TNRCC regulations, and that May did not contend Barton's otherwise owed a duty to bring the well into compliance with such regulations. Because Barton's did not owe a duty to bring the well into compliance with TNRCC regulations, Rudder's opinion that Barton's failed to use ordinary care to do so would not have supported a finding that Barton's was negligent.

Assuming, *arguendo*, that the trial court erred in excluding Rudder's testimony, the error was not harmful and did not cause rendition of an improper judgment. See TRAP 44.1. Because we conclude that exclusion of Rudder's opinions was not harmful, we do not address the questions of whether error was preserved as to such opinions, see TEX. R. EVID. 103(a)(2), (b); Fletcher v. Minnesota Min. and Mfg. Co., 57 S.W.3d 602, 607

14

(Tex.App.--Hous. [1st Dist.] 2001, pet. denied); or whether the trial court abused its discretion in excluding the opinions. See Gammill, 972 S.W.2d at 718-19.

Issue ten is overruled.

## ISSUE ELEVEN: FAILURE TO GIVE JURY INSTRUCTION
## ON EXCUSE FOR BREACH OF CONTRACT

Issue 11 asserts error in the trial court's refusal to instruct the jury in conjunction with Jury Question 12 that May's failure to comply with the agreement was excused by Barton's previous failure to comply with a material obligation of the same agreement. Question 12, together with an accompanying instruction which May does not challenge, asked if May's failure to comply with the agreement between May and Barton's was excused. The charge was structured so that the jury was to answer Question 12 only if it previously found that the parties agreed to Barton's version of the agreement, and that May failed to comply with that agreement.

A trial court's decision to submit or refuse a particular instruction is reviewed for abuse of discretion. See In re V.L.K., 24 S.W.3d 338, 341 (Tex. 2000). Whether a trial court abuses its discretion by acting without reference to any guiding rules and principles, see Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939), is measured by the rules of procedure, the substantive law and the requirement that the parties and the appellate courts be able to tell what the jury answered and the bases for its answers. See Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388 (Tex. 2000). When the trial court refuses to submit a requested instruction, one question on appeal is whether

15

the instruction was supported by pleadings and evidence. See TEX. R. CIV. P. 278; Elbaor v. Smith, 845 S.W.2d 240, 243 (Tex. 1992). We review the evidence under a legal sufficiency standard to determine whether evidence supported the requested question. See id.

We must review the entire record to determine whether it contains legally sufficient evidence to support a claim that Barton's materially breached the agreement which Barton's claimed was made and which was evidenced by Barton's December 27, 1999, written estimate. That was the agreement the jury found was reached between the parties.

Dale Barton testified that when May came in to discuss reworking the well, he told May that he did not believe the well could be reworked in accordance with May's drawings; but that he could pull the pump from the well, install an 8" liner and screen with factory-mill perforations, and try to gravel-pack and concrete the well. According to Dale Barton, May responded "Let's try it." Dale Barton testified that he explained what Barton's would do to the well; wrote the estimate dated December 27, 1999, and gave a copy to May; May agreed to Barton's proposal; and Barton's performed the work the two men agreed would be done.

May did not claim Barton's materially breached Barton's version of the agreement; May claimed the agreement terms advanced by Barton's simply never were the agreement. The jury disagreed with May.

May urges, without explanation, that the jury "could have found" a material breach by Barton's (1) placing an 8" liner in the well, (2) gravel packing the well, (3) failing to

16

cement outside of the 16" casing, or (4) using an inadequate screen. Our review[3] of the entire record, however, reveals no evidence that Barton's did not perform the material parts of the agreement as testified to by Dale Barton and found by the jury. The evidence was legally insufficient to support submission of the instruction May requested. Accordingly, the trial court did not abuse its discretion in refusing to give the instruction. See TEX. R. CIV. P. 278; Elbaor, 845 S.W.2d at 243.

Issue 11 is overruled.

CONCLUSION

Having overruled May's 11 issues, we affirm the judgment of the trial court.

Phil Johnson
Chief Justice

---

[3]See, also, our analysis of the record in regard to May's issues one through six.