950 CORBINDALE, L.P., 950 Corbindale Management, L.L.C., 9041 Katy Freeway, Ltd., 9041 Katy Freeway Management, L.L.C., 9039 Holdings Management, L.L.C., Lester Allison, and Richard Plessala, Appellants

v.

KOTTS CAPITAL HOLDINGS LIMITED PARTNERSHIP and Kotts Capital Holdings, Inc., Appellees.

No. 14–09–01046–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 22, 2010.

E.F. Mano DeAyala, Corey Michael Weideman, David A. Furlow, Houston, for appellants.

Thomas M. Farrell, Michael A. Mills, Bradley Wayne Hoover, Houston, for appellees.

Panel consists of Justices ANDERSON, FROST, and SEYMORE.

## OPINION

JOHN S. ANDERSON, Justice.

This is an accelerated interlocutory appeal from the denial of a motion to stay litigation and compel arbitration. Appellants, 950 Corbindale, L.P., 950 Corbindale Management, L.L.C., 9041 Katy Freeway, LTD., 9041 Katy Freeway Management, L.L.C., 9030 Holdings, L.P., 9030 Holdings Management, L.L.C., Lester Allison, and Richard Plessala, contend the trial court abused its discretion by denying their motion to stay litigation and compel arbitration. We agree.

### FACTUAL AND PROCEDURAL BACKGROUND

### I. The Partnership Agreements

In 2004, the parties entered into three limited partnerships for the purpose of acquiring, operating, managing, owning, selling, or otherwise disposing of real property. The three limited partnerships are "950 Corbindale, LP", "9041 Katy Freeway, Ltd.", and "9030 Holdings, LP". Each of the three partnerships own a tract of real property in Hedwig Village near the Katy Freeway. The three partnerships are structured essentially the same way. Each partnership has as its general partner a limited liability company with the same name as the partnership. Richard Plessala is the president of each of the limited liability companies serving as general partners for the partnerships. The partnerships also each have three limited partners, which are divided into three classes based on their capital contributions and provide for different returns based on the amount of contribution. The Class I limited partner in each of the partnerships is Kotts Capital Holdings, LP, president John Kotts. The Class II limited partner is Lester Allison and the Class III limited partner is Richard Plessala. Because Kotts Capital Holdings, LP provided the majority of initial capital contribution, it was granted a preferential right of return. Kotts Capital Holdings, LP must receive a 10% return per annum on its capital contributions and a return on its capital contribution before the other limited partners receive a distribution.

The partnership agreements grant the general partners of the partnership broad powers and responsibilities to manage, operate, and control the business and affairs of the partnerships. If the general partners decide to sell the real property held by the partnership, the partnership agreements provide that the general partners must obtain the consent of the Class I and Class II limited partners in the aggregate of more than 50% of the interest in the partnership. The partnership agreements contain buy-sell procedures in the event there is a deadlock resulting from the failure of Kotts Capital Holdings, LP and Allison (Class I and Class II limited partners) to reach an agreement. This procedure allows one limited partner to make an offer to any of the other limited partners

to either purchase all of the other partners' aggregate interest or sell to the other partner all of his aggregate interest in order to resolve the deadlock.

Additionally, the partnership agreements all contain an agreement to arbitrate "any claim, dispute, claim [sic], controversy or disagreement (each a *'Dispute'*) between the parties or any of their respective subsidiaries, Affiliates, successors and assigns under or related to this Agreement or any document executed pursuant to this Agreement or any of the transactions contemplated hereby." The agreement to arbitrate contains a clause providing that "[t]he arbitrators will have the authority to award compensatory damages only."

## II. The Offer

On August 20, 2009, the partnerships received an offer to purchase all three tracts of property for a lump sum. The offer was made by John Kotts, president of Kotts Capital Holdings, LP, the Class I limited partner. The general partner of each partnership rejected the offer because under the preferred return provisions only the Class I limited partner, Kotts Capital Holdings, LP, would receive any of the sale proceeds.

## III. Request for Declaratory Relief

On October 2, 2009, Kotts Capital Holdings, LP and Kotts Capital Holdings, Inc. (appellees) filed a petition in Harris County district court against 950 Corbindale, LP; 950 Corbindale Management, LLC; 9041 Katy Freeway, Ltd.; 9041 Katy Freeway Management, LLC; 9039 Holdings, LP; 9039 Holdings Management, LLC; Lester Allison; and Richard Plessala (appellants) requesting declaratory relief. In their petition they asked the court to clarify the parties' rights, status, and other legal relations under the partnership agreements. Appellees contended that ap-

pellants—specifically the general partners—had a conflict of interest and could not fairly evaluate the offer and rejected it out of self-interest. Appellees contend the offer should have been submitted to the Class I and Class II limited partners instead, and if a deadlock resulted, the buy-sell procedures could be invoked.

In response, appellants filed a general denial subject to a motion to stay litigation and compel arbitration. The appellants argued that each of the partnership agreements contained a valid arbitration agreement and that the dispute fell within the scope of the arbitration agreements. Appellees responded with an opposition to appellants' motion to stay litigation and compel arbitration. The appellees argued the partnership agreements (containing the arbitration agreements) entered into evidence were not properly authenticated and therefore were insufficient evidence of a valid agreement to arbitrate. Alternatively, appellees argued that if the court found a valid arbitration agreement existed, that the dispute did not fall within the scope of the arbitration agreement. Specifically, appellees contended their request for declaratory relief falls outside the scope of the arbitration agreement because the arbitration agreement provides that arbitrators may award "compensatory damages only".

On November 13, 2009, the district court conducted a hearing to decide the arbitration issues. During the hearing, the parties entered into a Rule 11 agreement, providing that appellees waived any objections to authenticity of the partnership agreements. On November 18, 2009, the district court denied appellants' motion to compel arbitration. In its order, the court found "[t]he contract, as a whole, does not support a finding that all remedies other than compensatory damages are waived. Defendant has not met its burden." Ap-

pellants timely filed this interlocutory appeal.

## DISCUSSION

Appellants contend the only issue before this court is whether the trial court abused its discretion in determining the declaratory judgment action was outside the scope of the arbitration agreement. Appellants argue appellees conceded the validity of the arbitration agreement by way of a Rule 11 agreement. Appellees disagree. Appellees contend the validity of the arbitration agreement was not established in the Rule 11 agreement; they argue they conceded only the authenticity of the partnership agreements, including the arbitration agreement, entered into evidence. Furthermore, appellees contend their declaratory judgment action was outside the scope of the arbitration agreement and that the trial court properly denied appellants' motion to stay litigation and compel arbitration.[1]

## I. Standard of Review

 To enforce an arbitration agreement, a party must establish (1) the existence of an agreement to arbitrate, and (2) the claims asserted fall within the scope of the agreement. *In re Prudential Sec., Inc.*, 159 S.W.3d 279, 282 (Tex.App.— Houston [14th Dist.] 2005, no pet.). The court has no discretion but to compel arbitration if the answer to both questions is affirmative. *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003). In determining the validity of agreements to arbitrate, we generally apply principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex.2006).

 Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claim. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001). Under the Federal Arbitration Act, any doubts as to whether appellees' request for declaratory relief falls within the scope of the arbitration agreement must be resolved in favor of arbitration.[2] *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex.1995). The policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Marshall*, 909 S.W.2d at 899 (quoting *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 338 (5th Cir.1984)). The presumption of arbitrability is particularly applicable when the clause is broad; that is, it provides for arbitration of "any dispute arising between the parties," or "any controversy or claim arising out of or relating to the contract thereof," or "any controversy concerning the interpretation, performance

1. Appellees also contend appellant's claims under the Federal Arbitration Act (FAA) are barred because appellants failed to bring those claims pursuant to a writ of mandamus. The legislature recently amended this requirement and now allows parties to take appeal of an interlocutory order in matters subject to the Federal Arbitration Act. *See* Tex. Civ.

Prac. & Rem.Code Ann. § 51.016 (Vernon Supp.2009).

2. Whether a case is governed by the FAA or the TAA, many of the underlying substantive principles are the same. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001). This opinion relies interchangeably on cases that discuss the FAA and TAA.

or application of the contract." *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 230 (Tex.App.—Houston [14th Dist.] 1993, writ denied). In such instances, absent any express provision excluding a particular grievance from arbitration, only the most forceful evidence of purpose to exclude the claim from arbitration can prevail. *Id.* In determining whether a claim falls within the scope of an arbitration agreement, we focus on the factual allegations of the complaint, rather than the legal causes of action asserted. *Marshall,* 909 S.W.2d at 900. The burden was upon appellees to show that their request fell outside the scope of the arbitration agreement. *Id.*

## II. Analysis

### A. Validity of the Arbitration Agreements

Appellees argue the arbitration agreements are invalid because they cause a waiver of substantive rights and remedies afforded by statute. Appellees claim because the arbitration agreements state "[t]he arbitrators will have the authority to award compensatory damages only," the arbitrator does not have the authority to grant appellees the declaratory relief they seek or any of the statutory remedies prescribed by the Uniform Declaratory Judgments Act. Appellees rely on *In re Poly–America, L.P.* for the contention that the arbitration agreement at hand is unconscionable. *See In re Poly–America, L.P.,* 262 S.W.3d 337, 349, 352–53 (Tex.2008) (holding arbitration agreement's provisions expressly precluding remedies available under the Workers' Compensation Act were substantively unconscionable and void under Texas law). Appellants argue appellees waived the unconscionability argument by failing to present it to the trial court. An allegation that a provision in a contract is void, unen-

forceable, or unconscionable is a matter in the nature of avoidance and must be affirmatively pleaded. Tex.R. Civ. P. 94 (noting party must affirmatively plead any matter constituting an avoidance or affirmative defense); *Parks v. Developers Sur. and Indent. Co.,* 302 S.W.3d 920, 924 (Tex. App.—Dallas 2010, no pet.). If a party fails to plead the affirmative defense, it is waived. *Id.* at 924. Because appellees failed to assert in the trial court that section 16.3(d) causes a waiver of rights under the Uniform Declaratory Judgment Act, we may not now consider their argument. *See id.*

The only argument appellees presented before the trial court regarding the validity of the arbitration agreements was that the agreements were not properly authenticated and therefore not sufficient evidence of an agreement. Because appellees conceded the authenticity of the agreements in the Rule 11 agreement, they waived the only argument they presented to the trial court regarding the validity of the arbitration agreements.

Accordingly, we see no evidence indicating the arbitration agreements appellants entered into evidence are not valid.

### B. Scope

Appellants contend the provision giving the arbitrator authority to "award compensatory damages only" does not foreclose an arbitrator's ability to grant declaratory relief. We agree.

The "dispute provision" in section 16.3(a) of the arbitration agreements at hand is broad, requiring that any dispute under or related to the partnership agreement or any document executed pursuant to the partnership agreement or any of the transactions contemplated by the partnership agreement shall be subject to arbitration. The only limitation in the ar-

bitration agreements is the type of damages that may be awarded—compensatory only. The word "only" is a modifier. The rule concerning modifiers is:

> The reader naturally assumes that the parts of a sentence which are placed next to each other are logically related to each other.... The rule which will guide you may be stated in two parts: (1) place all modifiers, whether words, phrases, or clauses, as close as possible to the words they modify; (2) avoid placing these elements near other words they might be taken to modify.

*Samano v. Sun Oil Co.*, 621 S.W.2d 580, 582 (Tex.1981) (quoting KIERZEK, THE MACMILLAN HANDBOOK OF ENGLISH (3d ed.1954)). Another statement of the rule of grammar is: "[p]lace modifiers so that they will be connected immediately with the words they modify." *Id.* (quoting WOOLEY & SCOTT, COLLEGE HANDBOOK OF COMPOSITION 72 (4th ed.1944)). Because the word "only" directly follows the words "compensatory damages", proper rules of grammar indicate "only" was intended to modify these words. If "only" had been placed next to the word "authority", then it might indicate the arbitrator's had authority only to grant compensatory damages; however, that is not the case. Appellees brought an action for declaratory relief, not damages. The arbitrator's authority to grant declaratory relief was not limited. Along the same line, had appellees brought an action for damages other than compensatory damages, then the arbitrators would be without authority to award them.

Appellees' claims fall within the broad provision of section 16.3(a), defining "disputes". Consequently, appellees' request for declaratory relief is within the scope of the arbitration agreement. The trial court abused its discretion by denying appellants' motion to compel arbitration. Accordingly, we sustain appellants' sole issue.

## CONCLUSION

We hold the trial court erred in denying appellants' motion to stay litigation and compel arbitration. We reverse the order denying the motion to stay litigation and compel arbitration and remand this cause with instructions to the trial court to enter an order compelling arbitration.