# NO. 12-14-00007-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *REX SMITH AND NANCY SMITH, APPELLANTS* | § | *APPEAL FROM THE 294TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *KELLY DAVIS AND AMBER DAVIS, APPELLEES* | § | *VAN ZANDT COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Rex Smith and Nancy Smith appeal the trial court's judgment in favor of Kelly Davis and Amber Davis based on Texas Property Code Section 5.077. The Smiths raise fourteen issues on appeal. We affirm.

## BACKGROUND

The Smiths own the Tall Oaks Estates Subdivision in Van Zandt County, Texas. In 2003, Rex Smith signed a contract with the Davises to allow them to purchase lot nine of the subdivision for $43,750.00 with payments to be made over 180 months. In 2004, the Davises executed a vendor's lien note and deed of trust made payable to the Smiths, after which the Smiths executed a warranty deed with vendor's lien conveying lot nine to the Davises.

In March 2005, lot seven in the subdivision became available for purchase. After a meeting between Rex Smith and the Davises, they executed another contract in which the Davises agreed to purchase lot seven for $65,100.00, with payments to be made over a 360 month period. The payments that the Davises had made to the Smiths for lot nine were applied to the purchase price for lot seven. Additionally, the Davises reconveyed lot nine to the Smiths.

As 2007 came to a close, the Davises requested that the Smiths give them a deed to lot seven, as had been done on lot nine. Before sending the Davises the requested deed to lot seven,

Rex Smith sent a vendor's lien note and deed of trust to the Davises to sign. In response, the Smiths received the following letter from S. Gary Werley, the attorney for the Davises:

January 15, 2008

Rex Smith and wife, Nancy Smith
P. O. Box 536
Eustace, TX 75214

Re:     *Lots #7 Tall Oaks Estates*
        *Van Zandt County*

Dear Mr. and Mrs., Smith:

I represent Kelly and Amber Davis in reference to the executory contract for Lot #7 of Tall Oaks Estates Subdivision, dated March 22, 2005.

You furnished a Deed of Trust and Promissory Note pursuant to Section 5.081 of the Texas Property Code. The section is only available [sic] to the purchaser, who is not responsible for any costs and requires you to execute and record a warranty deed. Also the note is to be equal to the balance owed under the contract-not the contract total.

I inquired about the balance and was informed that you had not furnished the Annual Accounting Statement required by Section 5.077. Pursuant to Section 5.077(d) you are liable for liquidated damages in the amount of $250.00 a day since January 31, 2006 and $500.00 a day since January 31, 2007 for a total of $273,750.00, limited by the fair market value of the property being $90,000.00.

Please send the sum to me, made payable to Kelly and Amber Davis.

Yours truly,

/s/ S. Gary Werley

S. Gary Werley

When the Smiths did not meet their demands, the Davises filed suit against the Smiths alleging various statutory violations based on the contract to convey lot seven. Eventually, the case was tried to a jury. The jury made findings in favor of the Davises based on statutory fraud in a real estate transaction under Texas Business and Commerce Code Section 27.01, and failure to provide annual statements under Texas Property Code Section 5.077, as well as various other violations of the Texas Property Code.

Before judgment was rendered, the Davises elected to take the relief found by the jury pertaining to statutory fraud in a real estate transaction. The Smiths appealed to this court, and we reversed the trial court's judgment based on that theory. *See **Smith v. Davis***, No. 12-12-

00169-CV, 2013 WL 2424266, at*1 (Tex. App.—Tyler June 5, 2013, no pet.) (mem. op.). We also remanded the case to the trial court, so that the Davises could elect another remedy. *Id*. at *7.

On remand, the Davises elected the relief awarded by the jury for the Smiths' failure to provide the annual statements required by Texas Property Code Section 5.077. The trial court rendered a new judgment awarding the Davises $65,100.00, plus prejudgment interest and attorney's fees. The new judgment also included other alternative remedies in the event the Section 5.077 award was reversed. In this appeal, the first three of fourteen issues brought forward by the Smiths relate to the judgment granting the Davises relief under Section 5.077 of the Texas Property Code.

## VOID EXECUTORY CONTRACT

In their first issue, the Smiths claim that the executory contract is void because it violates Texas Property Code Section 5.072. Specifically, the Smiths argue in their brief that "the written agreement on which [the Davises] base their claims is void, [which] would eliminate the claims based on Texas Property Code Section . . . 5.077." The Smiths claim that the executory contract violates Section 5.072 in two respects: (1) the contract required Nancy's signature because the property was Rex and Nancy's joint community property, yet her signature was absent from the agreement; and (2) there were oral agreements between the parties at the time the contract was executed.

### Standard of Review and Applicable Law

An executory contract for the conveyance of real property, also known as a contract for deed, is one method to effectuate a real estate transaction. *See Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005). Unlike a traditional mortgage, an executory contract "allows the seller to retain title to the property until the purchaser has paid for the property in full." *Id.*; *see also Shook v. Walden*, 368 S.W.3d 604, 625 (Tex. App.—Austin 2012, pet. denied) ("A contract for deed differs from a conventional contract for sale of realty, in which the seller and purchaser mutually agree to complete payment and title transfer on a date certain (the 'closing date')"). Said another way, in an executory contract, "legal title to the property does not transfer until after all purchase payments have been made." *Flores*, 185 S.W.3d at 435 (Wainwright, J., concurring).

3

Executory contracts covering property to be used as a residence must satisfy numerous requirements, and are highly regulated by the legislature. *See* TEX. PROP. CODE ANN. §§ 5.061-.085 (West 2004). Section 5.072, entitled "Oral Agreements Prohibited," states in pertinent part that

(a) An executory contract is not enforceable unless the contract is in writing and signed by the party to be bound or by that party's authorized representative.

(b) The rights and obligations of the parties to a contract are determined solely from the written contract, and any prior oral agreements between the parties are superseded by and merged into the contract.

(c) An executory contract may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the contract.

TEX. PROP. CODE ANN. § 5.072(a)-(c) (West 2004). This section creates a specific statute of frauds and parol evidence rule for executory contracts. *See id.*

The contention that a contract is void means that it was never of any legal effect and therefore a nullity. *Swain v. Wiley Coll.*, 74 S.W.3d 143, 146 (Tex. App.—Texarkana 2002, no pet.). An allegation that a contract is void is a matter in the nature of avoidance and must be affirmatively pleaded. *See 950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship*, 316 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *see also* TEX. R. CIV. P. 94 (noting party must affirmatively plead any matter constituting an avoidance or affirmative defense). An affirmative defense is defined as a denial of the plaintiff's right to judgment even if the plaintiff establishes every allegation in his pleadings. *Hassell Constr. Co., Inc. v. Stature Commercial Co., Inc.*, 162 S.W.3d 664, 667 (Tex. App.—Houston [14th Dist.] 2005, no pet.). If a party fails to plead an affirmative defense, such as a contention that a contract is void, it is waived. *See Parks v. Developers Sur. & Indem. Co.*, 302 S.W.3d 920, 923-24 (Tex. App.—Dallas 2010, no pet.).

**Discussion**

The Smiths contend that the executory agreement signed in 2005 by Rex Smith and the Davises for the purchase of lot seven violated Section 5.072, rendering the contract void. First, the Smiths argue that because Nancy did not sign the executory contract, the agreement is a void oral contract. Also, they contend that the Davises agreed to sign the promissory note and deed of trust in order to receive a warranty deed with vendor's lien from the Smiths, which was a prior or

4

contemporaneous oral agreement in violation of Section 5.072. The Davises respond that the argument that the contract is void has been waived. We agree.

The contract signed by Rex Smith and the Davises was an executory contract for the conveyance of real property that the Davises testified was to be used as their residence. The Smiths pleaded the statute of frauds generally, and also pleaded that Nancy did not sign the agreement. However, the Smiths never pleaded or contended at trial that the contract was void as a result. As we have stated, whether a contract is void is an affirmative defense that must be pleaded or tried by consent, or else it is waived.[1] *See* TEX. R. CIV. P. 94; *see also* ***950 Corbindale, L.P.***, 316 S.W.3d at 196; ***Parks***, 302 S.W.3d at 923-24.

Because the Smiths failed to assert in the trial court that the contract was void and therefore never came into existence, we may not now consider their argument for purposes of reversing the trial court's judgment based on Section 5.077 of the Texas Property Code.[2] *See* TEX. R. CIV. P. 94.

The Smiths' first issue is overruled.

## APPLICABILITY OF TEXAS CIVIL PRACTICE AND REMEDIES CODE CHAPTER 41

In their third issue, the Smiths contend that the trial court was required to apply Texas Civil Practice and Remedies Code Chapter 41 in awarding damages under Texas Property Code Section 5.077 and it failed to do so.

---

[1] We are aware that Section 5.072 states that a violation renders the contract "unenforceable." But whether the contract is "unenforceable" for violating Section 5.072 does not resolve the separate and distinct issue of whether the violation renders the contract void, or merely voidable. The Texas Supreme Court has not resolved the issue of whether a real estate transaction is void or voidable when one spouse did not sign the necessary documents, and the real estate is jointly managed and controlled community property. *See* 1 Thomas M. Featherston, Jr. et al., ***Texas Practice Guide Probate*** § 2:87 (2013) (citing ***Dalton v. Don J. Jackson, Inc.***, 691 S.W.2d 765 (Tex. App.—Austin 1985, no writ); ***Vallone v. Miller***, 663 S.W.2d 97 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); ***Williams v. Portland State Bank***, 514 S.W.2d 124 (Tex. Civ. App.—Beaumont 1974, writ dism'd)).

[2] We note that the evidence before the jury showed the Smiths had received a total of $27,600.00 in payments from the Davises that was applied to the purchase of lot seven. The Davises did not assert that the doctrine of quasi-estoppel barred the Smiths from making an appellate argument that the contract was void. However, that theory would certainly be applicable to the facts of this case.

Quasi-estoppel (estoppel by contract) is a term applied to certain legal bars such as ratification, election, acquiescence, or acceptance of benefits. ***Forney 921 Lot Dev. v. Paul Taylor Homes***, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, no pet.). It is a longstanding doctrine applied to preclude contradictory positions: it precludes a person from asserting to another's disadvantage, a right inconsistent with a position previously taken. *Id*. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced. *Id*.

**Standard of Review and Applicable Law**

The meaning of a statute is a question of law, which we review de novo to ascertain and give effect to the legislature's intent. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 457 (Tex. App.—Houston [1st Dist.] 2007, no pet.). When construing a statute, we begin with its language. Our primary objective is to determine the legislature's intent, which, when possible, we discern from the plain meaning of the words chosen. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We presume the legislature intended a just and reasonable result by enacting the statute. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 626 (Tex. 2008). Where text is clear, it is determinative of that intent. *Entergy Gulf States*, 282 S.W.3d at 437. When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language. *City of Rockwall*, 246 S.W.3d at 626.

**Discussion**

The Smiths contend that the trial court was required to apply Chapter 41 because of the Texas Supreme Court's holding in *Flores v. Millennium Interests, Ltd*., 185 S.W.3d 427 (Tex. 2005). They also contend that we should consider the discussion on this issue in *Henderson v. Love*, 181 S.W.3d 810 (Tex. App.—Texarkana 2005, no pet.). The Davises reply that these two cases involve a prior version of Texas Property Code Section 5.077, and therefore are not applicable to the facts of this case.

The current version of Section 5.077 states as follows:

§ 5.077.  Annual Accounting Statement

(a)  The seller shall provide the purchaser with an annual statement in January of each year for the term of the executory contract.  If the seller mails the statement to the purchaser, the statement must be postmarked not later than January 31.

(b)  The statement must include the following information:
    (1)  The amount paid under the contract;
    (2)  The remaining amount owed under the contract;
    (3)  The number of payments remaining under the contract;
    (4)  The amounts paid to taxing authorities on the purchaser's behalf if collected by the seller;
    (5)  The amounts paid to insure the property on the purchaser's behalf if collected by the seller;
    (6)  If the property has been damaged and the seller has received insurance proceeds, an accounting of the proceeds applied to the property; and
    (7)  If the seller has changed insurance coverage, a legible copy of the current policy, binder, or other evidence that satisfies the requirements of Section 5.070(a)(2).

    (c)  A seller who conducts less than two transactions in a 12-month period under this section who fails to comply with Subsection (a) is liable to the purchaser for:

        (1)  Liquidated damages in the amount of $100 for each annual statement the seller fails to provide to the purchaser within the time required by subsection (a); and

        (2)  Reasonable attorney's fees.

    (d)  A seller who conducts two or more transactions in a 12-month period under this section who fails to comply with Subsection(a) is liable to the purchaser for:

        (1)  Liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement, but not to exceed the fair market value of the property; and

        (2)  Reasonable attorney's fees.

TEX. PROP. CODE ANN. § 5.077 (West Supp. 2014). The pre-2005 version of Section 5.077 did not include the limitation in (d)(1), which states "but not to exceed the fair market value of the property." *See* Act of June 18, 2005, 79th Leg., R.S., ch. 978, § 5, 2005 Tex. Gen. Laws 3282, 3284.

In *Flores*, the Texas Supreme Court answered certified questions from the United States Court of Appeals for the Fifth Circuit. The court concluded that (1) Section 5.077 is penal in nature, (2) a deficient annual statement representing a good faith effort to provide the statement does not trigger the liquidated damages provision in Section 5.077, and (3) that if the provision is triggered, the statutory damages do not require actual harm as a predicate to recovery. *See Flores*, 185 S.W.3d at 434. The court went on to state that "because the incomplete annual statement here did not invoke the liquidated damages provision of Section 5.077(c), we decline to decide at this time whether these statutory damages are also 'exemplary damages' within the meaning of Chapter 41." *Id.* Since the court did not decide whether Chapter 41 applied in this circumstance, *Flores* is not instructive in our analysis.

In *Henderson*, the Texarkana court of appeals determined that the pre-2005 "liquidated damages" version of Section 5.077 without any limitation on the amount of damages fell squarely within Chapter 41's definition of exemplary damages. *Henderson*, 181 S.W.3d at 817. Unlike *Henderson*, however, the current version of Section 5.077 applies to this case.[3] Texas Civil Practice and Remedies Code Section 41.002 states in pertinent part that

---

[3] At least one court has questioned whether *Henderson* was correctly decided, specifically on the issue of whether the 2005 amendment to Section 5.077 was retroactive in nature. *See McGee v. Caulfield*, No. 01-07-00055-CV, 2009 WL 1161819, at *5 n.14 (Tex. App.—Houston [1st Dist.] Apr. 30, 2009, no pet.) (mem. op.)

(a) This chapter applies to any action in which a claimant seeks damages relating to a cause of action.

(b) This chapter establishes the maximum damages that may be awarded in an action subject to this chapter, including an action for which damages are awarded under another law of this state. This chapter does not apply to the extent another law establishes a lower maximum amount of damages for a particular claim.

TEX. PRAC. & REM. CODE ANN. § 41.002(a), (b) (West 2008). In accordance with Section 41.002(b), the current version of Section 5.077 is "another law" that "establishes a lower maximum amount of damages" for this "particular claim." For that reason, *Henderson* does not apply to the facts of this case.

At trial, Rex Smith testified that the fair market value of lot seven was $65,100.00. The jury found that the Smiths failed to provide the annual statements to the Davises in 2006, 2007, and 2008. The evidence established that the $250.00 per day payment was applicable to the Smiths. The jury answered in special issue number 17 that the value of lot seven at the time of sale was $65,100.00. The trial court rendered judgment for damages under Section 5.077 in the amount of $65,100.00. This complies with Section 5.077(d)(1).

Under Chapter 41, exemplary damages are limited to the greater of (1) twice the amount of economic damages plus an amount equal to noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000. TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b) (West Supp. 2014). Since twice the amount of economic damages plus noneconomic damages here is less than $750,000.00, the cap on exemplary damages in this case if Chapter 41 applied would be $200,000.00. *See id.* As we have stated, the jury awarded $65,100.00 for the Section 5.077 violations, which is less than $200,000.00.

Because Section 5.077 is "another law" establishing a lower amount of damages for this "particular claim," the damages provision in Section 5.077 controls, and Chapter 41 is inapplicable to this suit. *See* TEX. PROP. CODE ANN. § 5.077(d)(1); TEX. CIV. PRAC. & REM. CODE ANN. § 41.002(b); *see also In re Dodson*, No. 06-11952-CAG, 2008 WL 4621293, at *9-11 (Bankr. W.D. Tex. Oct. 16, 2008) (mem. op.) (applying same analysis).

The Smiths' third issue is overruled.

---

(noting that *Henderson* may be incorrect because court did not address applicability of Texas Government Code Section 311.031(b) in its retroactivity analysis).

In their second issue, the Smiths contend that the evidence is legally and factually insufficient to support an award of damages under Texas Property Code Section 5.077 and Texas Civil Practice and Remedies Code Chapter 41. As we explained in addressing the Smiths' third issue, Chapter 41 is inapplicable here. Therefore, we will examine the legal and factual sufficiency of the evidence only as it relates to Section 5.077.

**Standard of Review**

When confronted with both a legal and factual sufficiency challenge, an appellate court should first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co*., 619 S.W.2d 400, 401 (Tex. 1981) (per curiam); *May v. Barton's Pump Serv., Inc*., 153 S.W.3d 469, 475 (Tex. App.—Amarillo 2004, no pet.). The test for legal sufficiency is whether the evidence at trial "would enable reasonable and fair minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must view the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable fact finder could and disregarding any contrary evidence unless a reasonable fact finder could not. *Id*. We assume jurors made all inferences in favor of their verdict if reasonable minds could and disregard all other inferences. *Id*. at 820.

When considering a factual sufficiency challenge to a jury's verdict, we must review and weigh all of the evidence, not just the evidence that supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998). After considering and weighing all of the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id*. at 407. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

**Applicable Law and Discussion**

Section 5.077 requires the seller to provide the purchaser with an annual statement in January of each year for the term of the executory contract. TEX. PROP. CODE ANN. § 5.077(a). The statement must include the information required by statute. *See id.* § 5.077(b). A seller conducting two or more transactions in a twelve month period who entirely fails to send the statement is liable to the purchaser for statutory liquidated damages in the amount of $250.00 per

day for each day after January 31 that the seller fails to provide the statement, but not exceeding the fair market value of the property. *Id.* § 5.077(d).

Here, as we have already stated, the executory contract covering lot seven is subject to Section 5.077. Both Kelly and Amber Davis testified that they never received an annual accounting from Rex Smith with the information described in Section 5.077. Smith himself testified that he never sent an annual accounting with the statutory information to the Davises in the years 2006, 2007, and 2008. The jury answered in special issue 13(a) that Rex Smith did not send the required accounting to the Davises in the years 2006, 2007, and 2008.

The jury found that the fair market value of lot seven was $65,100.00. Rex Smith testified to that fact himself. When no annual statement is supplied to the purchasers under an executory contract, Section 5.077 is triggered. *See **Flores***, 185 S.W.3d at 429. Smith also testified that he engaged in two or more executory contract transactions for other properties he owned in 2003 and 2005, triggering the $250.00 per day penalty provision. We hold that the evidence here is both legally and factually sufficient to award the Davises $65,100.00 as damages for the violation of Section 5.077.

The Smiths' second issue is overruled.


## CONCLUSION

We have overruled the Smiths' three issues regarding the trial court's judgment based on the Smiths' violation of Texas Property Code Section 5.077. Because issues four through fourteen of the Smiths' brief address alternative theories of recovery, we need not address them. *See* TEX. R. APP. P. 47.1. We ***affirm*** the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered August 20, 2014.
*Panel consisted of Worthen, C.J. and Griffith, J.,*
*Hoyle, J., concurring.*

I concur in the judgment of the court. However, because an allegation that a contract is void is not an affirmative defense, I do not join in that portion of the court's opinion in which it determines that the Smiths waived their first issue by failing to plead that the contract was void.[4]

## Void Contract - Waiver

A party is bound by the terms of his contracts unless a term is void, annulled, or set aside in some other way. ***Johnson v. Structured Asset Servs., L.L.C.***, 148 S.W.3d 711, 722 (Tex. App.—Dallas 2004, no pet.). An allegation that a provision of a contract is void is in the nature of avoidance and must be affirmatively pleaded. *See* TEX. R. CIV. P. 94; ***950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship***, 316 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Thus, a party must make an allegation that a provision in a contract is void in compliance with Rule 94 or the party waives the argument. ***950 Corbindale, L.P.***, 316 S.W.3d at 196.

A void contract is different. *See* ***Watts v. Pilgrim's Pride Corp.***, No. 12-04-00082-CV, 2005 WL 2404111, at *3 (Tex. App.—Tyler Sept. 30, 2005, no pet.) (mem. op., not designated for publication). A void contract is no contract; it binds no one and is a nullity. *Id.* (citing ***Seafarers' Welfare Plan v. George E. Light Boat Storage, Inc.***, 402 S.W.2d 231, 234 (Tex. App.—Houston [1st Dist.] 1966, writ. ref'd n.r.e.)). No disaffirmance is required to avoid a void contract. *Id.* A void contract is not rendered enforceable through other means such as waiver or quasi-estoppel. *Id.*

In their second amended answer and counterclaim, the Smiths denied that Nancy or anyone with her authority executed the contract. They further pleaded that the contract violated the statute of frauds because Nancy did not sign the document. The Smiths then argued at trial that the contract violated Texas Property Code Section 5.072 because it (1) did not contain Nancy's signature and (2) violated the statute of frauds. Even were the Smiths required to plead that the contract was void, they raised these two issues in their most recent answer before trial. They further presented evidence and argument at trial in support of their allegations. Thus, the Smiths raised their first issue in the trial court.

Additionally, because the Smiths were not required to plead that the contract was void, I reach the merits of the Smiths' argument that they are not liable to the Davises because the contract violates the provisions of Section 5.072.

## Texas Property Code Section 5.072

Section 5.072 states that an executory contract is not enforceable unless it is in writing and signed by the party to be bound or by that party's authorized representative. TEX. PROP. CODE ANN. § 5.072(a) (West 2004). The Smiths argue that the contract in this case is an executory contract that fails to comply with Section 5.072 for two reasons. First, they contend that a portion of the contract is oral because Nancy did not sign the document. Second, they contend that Nancy is not bound by the agreement because neither she nor her authorized representative signed the contract.

The Smiths are correct that Section 5.072 prohibits oral agreements. *See id.* But the statute goes on to state that "[t]he rights and obligations of the parties to a contract are

---

[4] The Smiths contend in their first issue that the trial court erred in rendering judgment for the Davises because the executory contract at issue must be in writing and signed by the party to be bound or the party's authorized representative. *See* TEX. PROP. CODE ANN. § 5.072(a) (West 2004).

determined solely from the written contract, and any prior oral agreements between the parties are superseded by and merged into the contract." ***Id***. Thus, Section 5.072 simply restricts our review of the rights and obligations of the parties to the written contract. ***Id***. Here, the Davises presented a written contract executed by Rex. The trial court's judgment in favor of the Davises is against Rex alone, and not Nancy. As such, the relief granted the Davises was based on the written contract, and not based upon any oral agreement involving Nancy.

The Smiths also are correct that to be bound by an executory contract, the party or his authorized representative must have signed the contract. *See **id***. However, the Smiths argue that Nancy is not bound by the contract because the contract lacks her signature. The trial court's judgment is not against Nancy. The trial court's judgment is against Rex. The Smiths' argument does not go far enough to establish that the trial court erred. They have provided argument as to why Nancy should not have had a judgment rendered against her, but there is no such judgment. They have failed to provide argument as to how Section 5.072 prohibits a judgment against Rex, a party who did sign the executory contract, and to whom the trial court's judgment finds liable to the Davises.

### Conclusion

The Smiths failed to establish that, under the provisions of Section 5.072, the trial court erred in its judgment against Rex and for the Davises. Therefore, I would overrule the Smiths' first issue for that reason. Because I would reach the merits of the argument, I concur with the majority's opinion rather than join it.

**BRIAN HOYLE**
Justice

(PUBLISH)

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 20, 2014**

**NO. 12-14-00007-CV**

**REX SMITH,**
Appellant
V.
**KELLY DAVIS AND AMBER DAVIS,**
Appellee

Appeal from the 294th District Court

of Van Zandt County, Texas (Tr.Ct.No. 08-00171)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **REX SMITH**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J. and Griffith, J.*
*Hoyle, J., concurring.*