# IN THE SUPREME COURT OF TEXAS

No. 18-0071

GERALD GODOY, PETITIONER,

v.

WELLS FARGO BANK, N.A., RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

**Argued February 19, 2019**

JUSTICE BLACKLOCK delivered the opinion of the Court.

JUSTICE BUSBY did not participate in the decision.

Seventy-five years ago in *Simpson v. McDonald*, this Court held that "an agreement in advance to waive or not plead the statutes of limitation is void as against public policy." 179 S.W.2d 239, 243 (Tex. 1944). We reaffirm that longstanding principle today, although we agree with the courts of appeals that have since interpreted *Simpson* to allow a contractual waiver of the statute of limitations if the waiver is "specific and for a reasonable time." *E.g.*, *Am. Alloy Steel, Inc. v. Armco, Inc.*, 777 S.W.2d 173, 177 (Tex. App.—Houston [14th Dist.] 1989, no writ). The court of appeals found that Gerald Godoy waived the argument that his contractual waiver of the statute of limitations is void as against public policy. 542 S.W.3d 50, 54 (Tex. App.—Houston [14th Dist.] 2017). We hold that the court of appeals erred by declining to reach Godoy's argument, but we nonetheless agree with its ultimate disposition of the case. While portions of

Godoy's contractual waiver are unenforceable under *Simpson*, other portions are sufficiently specific and result only in the substitution of a four-year limitations period for a two-year period rather than the abandonment of all limitations prohibited by *Simpson*. When the enforceable portions of Godoy's contractual waiver are applied, limitations do not bar Wells Fargo's suit against him. We therefore affirm the judgment of the court of appeals.

## I. Background

GDG Mortgage, Inc., borrowed $250,000 from Wachovia Bank. The loan was secured by real property owned by GDG Mortgage. Gerald Godoy guaranteed the loan. The guaranty agreement Godoy signed included the following waiver of defenses:

> **GUARANTOR'S WAIVERS.**
> Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. . . .
>
> **GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.**
> Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public

2

policy, such waiver shall be effective only to the extent permitted by law or public policy.

GDG Mortgage defaulted. Wells Fargo, Wachovia's successor, foreclosed on GDG Mortgage's real property securing the loan. Wells Fargo purchased the property at the foreclosure sale, which took place in November 2011. The purchase price of the property was not enough to satisfy GDG Mortgage's unpaid balance. Wells Fargo sued Godoy to recover the deficiency in June 2015. Godoy moved for summary judgment, arguing that Wells Fargo's claim was barred by the Property Code's two-year statute of limitations for deficiency claims, which provides:

> If the price at which real property is sold at a foreclosure sale under Section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.

TEX. PROP. CODE § 51.003(a). In response, Wells Fargo moved for partial summary judgment, arguing that Godoy waived section 51.003's two-year statute of limitations when he signed the guaranty agreement. The trial court denied Godoy's motion for summary judgment and granted Wells Fargo's motion for partial summary judgment. Wells Fargo moved for final summary judgment on its deficiency claim, and the trial court granted that motion.

Godoy appealed. He argued that, under court of appeals decisions applying *Simpson v. McDonald*, a statute-of-limitations defense can only be waived if the language in the waiver is specific and for a defined period of time. *See Am. Alloy Steel, Inc.*, 777 S.W.2d at 177; *Duncan v. Lisenby*, 912 S.W.2d 857, 859 (Tex. App.—Houston [14th Dist.] 1995, no writ); *Squyres v. Christian*, 253 S.W.2d 470, 472 (Tex. App.—Fort Worth 1952, writ ref'd n.r.e.). Godoy claimed that the waiver he agreed to was indefinite and thus void as against public policy because, he contended, it allowed Wells Fargo to bring suit at any time in the future. 542 S.W.3d at 52. Citing

3

our decision in *Moayedi v. Interstate 35/Chisam Road, L.P.*, 438 S.W.3d 1 (Tex. 2014), Wells Fargo argued that, by signing a broad waiver of all defenses, a party such as Godoy can waive all statute-of-limitations defenses indefinitely. *Id.*

The court of appeals affirmed. *Id.* at 51. It held that, under *Moayedi*, Godoy's agreement to waive "all rights or defenses arising by reason of . . . any . . . anti-deficiency law" was sufficient to waive section 51.003(a)'s two-year statute of limitations. *Id.* at 53. The court of appeals did not consider Godoy's argument that his contractual waiver of the limitations period was void as against public policy under *Simpson*. It determined that Godoy waived this public-policy argument by failing to affirmatively plead it as a "matter constituting an avoidance" under Rule 94. *Id.* at 54; TEX. R. CIV. P. 94.

Although it did not consider Godoy's public-policy arguments against enforcement of the waivers, the court of appeals did not decide whether the guaranty agreement's waiver provision was sufficient to waive *all* Godoy's possible statute-of-limitations defenses. Because Wells Fargo sued within the four-year limitations period applying generically to suits to collect debts, the court of appeals concluded that its suit was timely even if Godoy could not contractually waive all limitations defenses. 542 S.W.3d at 55; *see* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3). The court of appeals decided only that Godoy waived the two-year statute of limitations and that Wells Fargo's suit—filed three-and-a-half years after the foreclosure sale—was not barred by the four-year limitations period that would apply in the absence of the two-year period. 542 S.W.3d at 55.

One court of appeals justice dissented. With respect to waiver, the dissent concluded that, under *Phillips v. Phillips*, Godoy did not need to plead his public-policy defense in his answer because the complete waiver of the statute of limitations "appears on the face of the petition" and

its voidness "is established as a matter of law." 542 S.W.3d at 62–63 (Frost, C.J., dissenting) (citing *Phillips*, 820 S.W.2d 785, 789–90 (Tex. 1991) (holding that a defense "is not waived by the failure to plead it if it is apparent on the face of the petition and established as a matter of law")). The dissent also argued that Wells Fargo tried the defense by consent by not objecting to Godoy's alleged pleading defect before the trial court rendered judgment. *Id.* at 65 (citing *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam)). With respect to the statute of limitations, the dissent argued that *Simpson* prohibits enforcement of Godoy's contractual waiver of section 51.003(a)'s two-year statute of limitations. *Id.* at 58. The dissent reasoned that nothing in *Moayedi*'s general holding regarding a contractual waiver of all defenses alters the specific rule in *Simpson* governing contractual waiver of statutes of limitation. *Id.* at 60–61. The dissent concluded that, because Godoy's waiver of the two-year statute of limitations was void under *Simpson*, the trial court's summary judgment enforcing that waiver should be reversed. *Id.* at 57.

Before this Court, Godoy contends that he did not waive the argument that his contractual abandonment of the statute of limitations is void as against public policy. Further, he continues to argue that, under *Simpson*, his agreement to waive section 51.003(a)'s two-year limitations period is void unless it is specific and for a pre-determined length of time. In Godoy's view, if the court of appeals is correct that he waived the two-year limitations period, then Wells Fargo could bring its deficiency claims at any time in the distant future. However, Wells Fargo no longer argues that the guaranty agreement waived all statute-of-limitations defenses such that it could bring suit in perpetuity. Wells Fargo now asserts only that Godoy waived all defenses under section 51.003 of the Property Code, including the two-year statute of limitations. The effect of waiving the two-year limitations period, Wells Fargo contends, is that the four-year limitations period of section

5

16.004(a)(3) of the Civil Practice and Remedies Code applies as a backstop in the absence of the waived two-year period. If a four-year limitations period applies, Wells Fargo's suit—brought three-and-a-half years after the foreclosure sale—is not barred by limitations.

## II. Discussion

### A. Standard of Review

"We review the trial court's summary judgment de novo." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "As the parties dispute not the facts" but questions of law, we "determin[e] all legal questions presented." *Guynes v. Galveston Cty.*, 861 S.W.2d 861, 862 (Tex. 1993). As always, "[w]e review legal questions *de novo*." *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002).

### B. Waiver

We first consider whether, by failing to plead it in his answer, Godoy waived the argument under *Simpson* that his contractual abandonment of the statute of limitations is void. Rule 94 of the Texas Rules of Civil Procedure requires that "[i]n a pleading to a preceding pleading, a party shall set forth affirmatively" any matter "constituting an avoidance or affirmative defense." An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155–56 (Tex. 2015) (quoting *affirmative defense*, BLACK'S LAW DICTIONARY (10th ed. 2009)). An avoidance "derives from the historic English common-law pleas of 'confession and avoidance'" and means "a plea in which a defendant admits allegations but pleads additional facts that deprive the admitted facts of an adverse legal effect." *Id.* at 156 (quoting *confession and avoidance*, BLACK'S LAW DICTIONARY (10th ed. 2009)). "[A]

6

statute of limitations is an affirmative defense . . . ." *Id.* Godoy pleaded the two-year statute of limitations as an affirmative defense in his original answer. His argument about contractual invalidity was not its own affirmative defense but rather an argument in support of his affirmative statute-of-limitations defense. The need to make the argument arose in the course of summary judgment briefing. It was a purely legal argument that did not involve "plead[ing] additional facts that deprive the admitted facts of an adverse legal effect." *Id.* The court of appeals nevertheless strictly applied its precedent, under which "[a]n allegation that a provision in a contract is void, unenforceable, or unconscionable is a matter in the nature of avoidance and must be affirmatively pleaded." 542 S.W.3d at 54 (quoting *950 Corbindale, L.P. v. Knotts Capital Holdings Ltd. P'ship*, 316 S.W.3d 191, 196 (Tex. App—Houston [14th Dist.] 2010, no pet.)).

"Whenever possible, we reject form-over-substance requirements that favor procedural machinations over reaching the merits of a case." *Dudley Constr., Ltd. v. Act Pipe & Supply, Inc.*, 545 S.W.3d 532, 538 (Tex. 2018). We question whether a legal argument in support of an already-pleaded affirmative defense amounts to its own "matter constituting an avoidance or affirmative defense" under Rule 94. Requiring Godoy, on pain of waiver, to amend his answer just to make a purely legal argument during summary judgment briefing—related to a matter he has already pleaded—does not serve the stated purpose of the Rules of Civil Procedure, which is to "obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law." TEX. R. CIV. P. 1.[1]

---

[1] "'This court has labored long and hard to remove as many procedural traps from our rules as possible. Litigants are entitled to have their disputes resolved on the merits, not on unnecessary and arcane points that can sneak up on even the most diligent of attorneys.' Tricky procedural rules threaten substantive rights." *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 73–74 (Tex. 2008) (Hecht, J., dissenting) (quoting *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 643 (Tex. 1989) (Ray, J., concurring)).

Ultimately, we need not decide whether Rule 94 required Godoy to amend his answer to plead his public-policy argument based on *Simpson*. Even if it did, the dissenting justice in the court of appeals was correct that under our decision in *Roark v. Stallworth Oil & Gas, Inc.*, Wells Fargo waived Godoy's alleged pleading error by not raising it in the trial court prior to judgment. 813 S.W.2d 492, 495 (Tex. 1991). Wells Fargo did not alert the trial court to Godoy's alleged pleading defect during summary judgment proceedings or at any other time prior to judgment. Instead, Wells Fargo waited until its response to Godoy's motion for new trial to argue that Rule 94 required some of Godoy's arguments to appear in his pleadings. Under *Roark*, this is too late. *Roark* involved a scenario nearly identical to this case. Stallworth, the defendant, moved for summary judgment, which the trial court granted based on an affirmative defense. *Id.* at 494. Roark, the plaintiff, complained that Stallworth had failed to plead the affirmative defense as required by Rule 94. *Id.* However, just like Wells Fargo in this case, Roark complained about this pleading defect for the first time in new-trial briefing. *Id.* We held that this was too late, stating that the party opposing summary judgment must "object to the lack of a rule 94 pleading in either its written response [to a summary judgment motion] or before the rendition of judgment." *Id.* Because Wells Fargo did not alert the trial court to the alleged pleading defect before judgment, it waived its complaint about Godoy's pleadings. The court of appeals therefore erred by declining to consider Godoy's void-as-against-public-policy argument.

### C. Statute of Limitations

Having determined Godoy did not waive his argument, we now consider it. Godoy contends that his contractual waiver of limitations defenses is void as against public policy. In *Simpson v. McDonald*, we stated: "It appears to be well settled that an agreement in advance to

8

waive or not plead the statutes of limitation is void as against public policy." 179 S.W.2d at 243; *see also Nunn v. Edmiston*, 9 Tex. Civ. App. 562, 563 (1895, no writ) ("It has been held that a person may, by contract, waive the right to plead the statute of limitations. Such agreements are, however, in our opinion, contrary to public policy, and subversive of a wholesome statute, and should not be upheld." (citation omitted)). Since *Simpson* was decided, courts of appeals have built upon its holding to require that a waiver of a statute of limitations is void unless the waiver is "specific and for a reasonable time." *Am. Alloy Steel, Inc.*, 777 S.W.2d at 177. *See also Duncan*, 912 S.W.2d at 859 ("The agreement must be specific and for a pre-determined length of time."). Indeed, the requirement that in order to be enforceable the statute-of-limitations waiver must be "specific" and "only for a reasonable time" was already understood to be part of the law at the time *Simpson* was decided. *See Titus v. Wells Fargo Bank & Union Tr. Co.*, 134 F.2d 223, 224 (5th Cir. 1943) ("[W]aiver before the bar has fallen must be specific and only for a reasonable time, and [] the purpose of such statutes may not be thwarted by general agreements to waive the benefit of the statute permanently. The Texas courts have adopted this view." (citation omitted)).

The courts of appeals have never understood *Simpson* as Godoy does, as an absolute bar on contractual waivers of statutes of limitation. Instead, from even before *Simpson* was decided, the general rule has been that such waivers must be specific and for a reasonable time. We agree with the courts of appeals that have applied this understanding of *Simpson*'s holding. *See, e.g.*, *Am. Alloy Steel, Inc.*, 777 S.W.2d at 177. Blanket pre-dispute waivers of all statutes of limitation are unenforceable, but waivers of a particular limitations period for a defined and reasonable amount of time may be enforced.

9

This holding does not conflict with our recent decision in *Moayedi v. Interstate 35/Chisam Road, L.P.* In *Moayedi*, we held that by agreeing to a general waiver of all defenses in a guaranty agreement, a party waived the right of offset provided by section 51.003(c) of the Property Code. 438 S.W.3d at 2. However, *Moayedi* did not consider whether a party could waive the statute of limitations provided by section 51.003(a) or whether such a waiver would run afoul of *Simpson*. The fact that *Moayedi* did not consider waiver of statutes of limitation is important, because "[a] limitations bar differs materially from a debtor's or guarantor's rights to valuation and offset under chapter 51." *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 281 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd). Statutes of limitation are "the Legislature's procedural device for establishing a point of repose for past actions and for 'ensur[ing] that the search for truth is not impaired by stale evidence or the loss of evidence.'" *Id.* (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 38–39 (Tex. 1998)). On the other hand, "a guarantor's valuation and offset rights under chapter 51 are substantive rights, not procedural bars to suit." *Id.*

While "[i]n general, parties may waive statutory and even constitutional rights," *Moayedi*, 438 S.W.3d at 6, a statute of limitations is not solely a right belonging to the party asserting it. It "protect[s] defendants *and the courts* from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990) (emphasis added). In addition to affording comfort and repose to the defendant, statutes of limitation protect the courts and the public from the perils of adjudicating stale claims. Although this Court has "long recognized a strong public policy in favor of preserving the freedom of contract," *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex. 2007)

10

(quoting *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001)), under our precedent that freedom does not include the authority to unqualifiedly waive statutes of limitation and thereby require the courts to attempt to adjudicate claims long after they have become stale. *Simpson* continues to prohibit enforcement of open-ended pre-dispute waivers that eliminate the limitations period.

We turn now to whether Godoy's contractual waiver of the two-year limitations period is enforceable. The "Guarantor's Waivers" section of the agreement contains three discrete sections that potentially waive statutes of limitation: sections (E), (F), and (A). We analyze each separately. Section (E) states that the guarantor "waives any and all rights or defenses arising by reason of . . . any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations." Section (F) purports to waive "any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness." Under *Simpson*, sections (E) and (F) are both unenforceable with respect to statutes of limitation because they purport to completely waive all limitations periods. *See* 179 S.W.2d at 243. Neither section is "specific" to a particular limitations period, and neither section has a "reasonable time" period limiting the waiver. *See Am. Alloy Steel, Inc.*, 777 S.W.2d at 177 ("[A]ny agreement made before the statutory bar has fallen must be specific and for a reasonable time."). Instead, application of either section (E) or section (F) would enable Wells Fargo to sue Godoy any time in the future, no matter how distant. Godoy is correct that sections (E) and (F) are unenforceable as applied to statutes of limitation.

Section (A) states:

11

> Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale . . . .

Unlike sections (E) and (F), section (A) is both "specific" and "for a reasonable time." *Id.* As for specificity, section (A) waives a particular, identifiable statute of limitations—the two-year period provided by section 51.003. It does so by waiving all "defenses" arising from any "anti-deficiency" law. Section 51.003 is Texas's "anti-deficiency law." *See Moayedi*, 438 S.W.3d at 6 (referring to section 51.003 as "[t]his anti-deficiency law"). Its two-year limitations period is a "defense" arising from this "anti-deficiency" law. Section (A) does not purport to waive *all* statutes of limitation or any *other* statute of limitations. It waives one statute of limitations, and it does so with sufficient specificity.

Section (A) also satisfies the "for a reasonable time" requirement. It does not state a substitute limitations period or provide a specific end-date for the waiver, defects which might make other such agreements unenforceable. In this instance, however, the law provides a reasonable four-year limitations period as a backstop. Once section 51.003(a)'s two-year statute of limitations is waived by operation of section (A), the four-year statute of limitations applying to suits to collect debts found in section 16.004(a)(3) of the Civil Practice and Remedies Code becomes applicable. The concern about litigating long stale claims is absent, and Godoy does not contend that a four-year limitations period is unreasonable. The backstop of section 16.004(a)(3) is sufficient to satisfy the requirement that contractual statute-of-limitations waivers must be only "for a reasonable time." *Am. Alloy Steel, Inc.*, 777 S.W.2d at 177.

The guaranty agreement's savings clause further supports this conclusion. It states, "[i]f any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy." Enforcing the section (A) waiver "to the extent permitted by law or public policy," as the parties agreed we should, we conclude that the four-year statute of limitations applying to suits to collect debts applies as a backstop. *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3). With respect to statutes of limitation, section (A) is effectively an agreement to move the limitations period for Wells Fargo's deficiency suit from two years to four years. Such an agreement does not run afoul of the policy concerns animating *Simpson* because it is specific and for a reasonable time. Section (A) of the "Guarantor's Waivers" is enforceable.[2]

## III. Conclusion

The court of appeals correctly concluded that Godoy contractually waived the two-year statute of limitations and that a four-year statute of limitations applied to Wells Fargo's claims. Because Wells Fargo sued Godoy within that four-year period, limitations did not bar the suit. Although we disagree with portions of the court of appeals' reasoning, its judgment is affirmed.

---

[2] Because we conclude that Section (A) is sufficient to waive the limitations period on which Godoy relies, we do not address whether the otherwise unenforceable waiver of all statutes of limitation in Section (E) could be enforceable on a limited basis by virtue of the guaranty agreement's savings clause. The savings clause provides, "If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy." It could be argued that, under this clause, the Section (E) waiver—while generally unenforceable on public-policy grounds under *Simpson*—should nevertheless be enforced to the greatest extent public policy allows. Whatever that greatest extent is, it likely includes a two-year extension of the statutory two-year limitations period. We do not address the validity of this argument, however, because it is not necessary to the disposition of the case.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** May 10, 2019