**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00069-CV**

_____

**LITTLE CYPRESS-MAURICEVILLE CONSOLIDATED
INDEPENDENT SCHOOL DISTRICT, Appellant**

**V.**

**PAL ENVIRONMENTAL SAFETY CORP., Appellee**

On Appeal from the 260th District Court
Orange County, Texas
Trial Cause No. 230198-C

**MEMORANDUM OPINION**

This is an interlocutory accelerated appeal about a contractual agreement between Appellant Little Cypress-Mauriceville Consolidated Independent School District ("Appellant," "LCM," or "District") and PAL Environmental Safety Corp. ("Appellee" or "PAL"). PAL agreed to perform remediation services at several of LCM's campuses after Hurricane Harvey in 2017. PAL performed work for LCM, LCM made certain payments to PAL but refused to pay further requested amounts,

1

and PAL filed a lawsuit against LCM, asserting claims for a suit on sworn account, a breach of contract, and seeking damages and attorney's fees. LCM filed a plea to the jurisdiction, arguing that the claims are barred by governmental immunity and that PAL stated no basis for a waiver of immunity necessary to establish jurisdiction over LCM. The trial court denied LCM's plea to the jurisdiction, and LCM appeals arguing the trial court erred in denying its plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (permitting an interlocutory appeal of a trial court's order denying a governmental entity's plea to the jurisdiction); Tex. Loc. Gov't Code Ann. §§ 271.151-160 ("Chapter 271, Subchapter I," setting forth the requirements for adjudication of claims arising under written contracts with local governmental entities); Tex. R. App. P. 28.1(a) (providing rules for accelerated appeals). We affirm.

Procedural Background

PAL's First Lawsuit Against LCM

On September 11, 2017, LCM and PAL entered into a written contract ("Contract") for PAL to perform emergency clean-up services at various campuses in the LCM school district due to damages sustained during Hurricane Harvey. The Contract gave a "contract estimate" of $10,500,000, and described this amount as a "not to exceed price for work performed based upon currently known conditions [and] not a lump sum contract price[.]" The scope of work under the Contract

2

outlined several specific items related to storm damage and also included "[o]ther Emergency Protective Measures as may be requested or required[,]" and the Contract also stated,

> The Work described in this Scope of Work is based upon an initial inspection only. Because of unknowns and uncertainties when dealing with damages of the nature reflected in this Scope of Work, changes to this Scope of Work, including changes in or to the rates, charges and time frames specified herein, may become necessary as the Work progresses.

The Contract further provided that "[c]hange order forms will be submitted in writing to [LCM] or AUTHORIZED REPRESENTATIVES[,]" and also stated, "[a]ssignments given to 'PAL' personnel that deviate from initial understanding of scope of work either verbally or in writing will be considered a CHANGE ORDER."

On December 12, 2018, PAL filed suit against LCM in trial cause number D180501-C, asserting claims for breach of contract and suit on sworn account and alleging that, although LCM had paid PAL $10,500,000, there was still a balance due of $9,703,548.07. In October of 2019, the parties entered into a Rule 11 Agreement that states the parties agreed that the statute of limitations was tolled for 24 months (as of the date the trial court signed an order dismissing the action), and that if LCM did not pay PAL the unpaid balance, PAL would refile its lawsuit and the 24 months that the suit was tolled would not be counted against the limitations period. The trial court signed an Order Granting Non-Suit Without Prejudice dismissing PAL's claims against LCM in trial cause number D180501-C.

3

PAL Refiles Its Suit Against LCM

On July 13, 2023, PAL filed its second suit against LCM in trial cause number 230198-C, again asserting claims for suit on a sworn account and breach of contract and adding a claim for quantum meruit and unjust enrichment.[1] According to the Original Petition ("Petition") in the second suit, once PAL began work, it encountered conditions that were previously unknown and that required additional work and cost, and that LCM instructed PAL verbally and in writing to complete the additional work. PAL alleged that on December 15, 2017, PAL remitted invoices to LCM totaling approximately $13,400,000, and at LCM's request, on January 8, 2018, PAL representatives addressed the LCM Board of Trustees to explain its work and invoices. The Petition alleged that, on January 24, 2018, PAL delivered its final invoices to LCM, totaling $20,203,548.07.

According to the Petition, PAL did not receive full payment by the summer of 2018. PAL alleges that LCM told PAL that LCM was waiting on funding from FEMA (the Federal Emergency Management Agency) related to the work, and that FEMA might require "a separate written change order to further document the added scope of work" that PAL performed. PAL further alleges that it submitted a written change order to LCM in August of 2018, but the LCM Board of Trustees did not execute the change order. PAL asserts that in a meeting on August 13, 2018, the

---

[1] PAL's equitable claims are not at issue in this appeal.

4

LCM Board of Trustees noted, "[i]n accordance with FEMA regulations, the District must pay reconstruction costs and then be reimbursed[,]" but LCM failed to pay PAL in full. In its Petition, PAL alleges that it entered into a tolling agreement with LCM based on assurances from LCM that it was working to obtain payments from FEMA and to make payment to PAL, yet LCM has failed to pay in full. According to the Petition, LCM paid PAL $10,500,000 and there is a remaining balance of $9,703,548.07. PAL contends the Legislature waived immunity for this breach of contract claim against LCM pursuant to sections 271.151 and 271.152 of the Texas Local Government Code. *See* Tex. Loc. Gov't Code Ann. §§ 271.151-.152 (setting forth requirements for adjudication of claims arising under written contracts with local governmental entities). PAL also contends that the suit was timely pursuant to the parties tolling agreement and that PAL is entitled to attorney's fees.

PAL attached documents to the Petition including a copy of the parties' written agreement; copies of invoices from PAL to LCM; and an affidavit from Joseph Annarumma, PAL's Vice President of Finance, stating that LCM still owes PAL $9,703,548.07.

LCM's Plea to the Jurisdiction and Original Answer Subject to Plea

LCM answered the Petition with a general denial and asserted various defenses, including that PAL's claims are barred by governmental immunity, statute of limitations, and failure to exhaust administrative remedies. LCM also filed a Plea

to the Jurisdiction ("Plea"), arguing that (1) PAL's claims are not based on a properly executed written contract stating its essential terms, (2) PAL failed to exhaust its administrative remedies before filing its lawsuit, and (3) PAL's claim is barred by limitations.

*(1) Properly executed written contract stating the essential terms.*

LCM argues that governmental immunity is not waived for PAL's claim for breach of contract because the record lacks evidence that the LCM Board of Trustees authorized PAL to "double the scope of the projects[.]" LCM asserts that PAL's Petition only alleged that the additional invoicing was based on "verbal and written change orders *directed* by LCM agents and representatives[,]"[2] and it did not allege that the change orders were actually *approved*. According to LCM, PAL's Petition conceded that LCM's Board of Trustees "chose not to execute [the] written change order" that PAL presented to the Board on August 13, 2018. LCM argues that "[e]ven if an arguable basis exists to find the Initial Agreement was enforceable, an extension of the price under that Agreement cannot be enforced without any 'properly executed' instrument." LCM further argues that section 44.0411 of the Texas Education Code limits change orders to 25% of the original agreed-to price for contracts over $1 million. *See* Tex. Educ. Code Ann. § 44.0411(d) ("A contract with an original contract price of $1 million or more may not be increased under this

---

[2] Emphasis added.

6

section by more than 25 percent."). LCM also argues that the Legislature has not waived immunity for claims in quantum meruit or other equitable claims.

*(2) Exhaustion of administrative remedies.*

LCM argues that, for PAL's Petition to be sufficient to invoke the trial court's jurisdiction, PAL must allege that it brought the matter before the "proper school authorities" and obtained a ruling before filing suit. LCM asserts that PAL did not allege that it presented its claim to the Board of Trustees nor that it followed the District's procedures or the contract terms for claims resolution. Therefore, because PAL failed to exhaust its administrative remedies before filing suit, the trial court lacked jurisdiction over the matter.

*(3) Statute of limitations.*

According to LCM, the latest that limitations could have begun to run is August 13, 2018, when the LCM Board of Trustees "chose not to approve a written change submitted by PAL." LCM argues that, although PAL referred to a tolling agreement executed by the parties, the LCM Board of Trustees never approved the tolling agreement. LCM also asserts that the purported tolling agreement states, "[t]he 24 months of tolling begins on the date the Court signs an order dismissing the above-referenced case[,]" but the trial court in the prior lawsuit never signed a dismissal order and the lawsuit was dismissed by PAL filing its nonsuit. LCM further argues that the superintendent's signature on the tolling agreement is inadequate to

7

bind the District because the Board of Trustees never voted to approve the agreement.

PAL's Response to LCM's Plea to the Jurisdiction

In its response to LCM's Plea, PAL argues that it had alleged facts and filed "indisputable evidence" of a valid waiver of LCM's governmental immunity under section 271.152 of the Texas Local Government Code, and the trial court had subject matter jurisdiction over the case. According to PAL, after Hurricane Harvey, the LCM Board of Trustees passed an emergency resolution as follows:

> declaring an emergency as a result of Hurricane Harvey and its aftermath, . . . declaring the delay posed by competitive procurement of contracts and purchasing methods in Education Code 44.031 would substantially impair the conduct of classes, [and] delegating authority to the Superintendent or designee to procure goods and services necessary to repair and remediate storm damage[.]

PAL attached a copy of the minutes of a September 8, 2017 emergency meeting of the LCM Board of Trustees in support of this assertion. In an Emergency Resolution the Board of Trustees passed on September 8, 2017, the Board determined as follows:

> [T]he delay posed by the purchasing methods provided for in Education Code 44.031 would prevent or substantially impair the conduct of classes or other essential school activities[,] and, thereby, [the Board of Trustees] resolve[s] that contracts for the replacement or repair of the equipment, school facility, or the part of the school facility may be

8

made by methods other than those required by Education Code 44.031 by the Superintendent or designee[.][3]

PAL alleges that LCM chose PAL to do the work after LCM obtained competitive pricing from several companies, consulting with FEMA to establish an "independent estimate" of the cost to repair LCM facilities and discussing options with a third-party disaster recovery consultant. LCM and PAL entered into an agreement on September 11, 2017, and the Superintendent for the District signed the agreement for LCM.

The parties' Contract identifies the school properties to be remediated, and it includes a "Description of Services" that PAL was to perform as follows: removing standing water, furniture, and equipment; demolition, removal, and disposal of damaged porous materials; moisture mapping; structural drying of building materials; post-demolition cleaning and disinfection; hydro-jetting of the underground drain system; and electrical testing and evaluation. In addition to the

---

[3] Section 44.031 of the Texas Education Code generally provides that school district contracts for goods and services shall be obtained through a competitive bidding process; however, subsection (h) provides the following exception:

> If school equipment, a school facility, or a portion of a school facility is destroyed, severely damaged, or experiences a major unforeseen operational or structural failure, and the board of trustees determines that the delay posed by the contract methods required by this section would prevent or substantially impair the conduct of classes or other essential school activities, then contracts for the replacement or repair of the equipment, school facility, or portion of the school facility may be made by a method other than the methods required by this section.

*See* Tex. Educ. Code Ann. § 44.031(h).

9

specified services, PAL's work was also to include "Other Emergency Protective Measures as may be requested or required[,]" and the Contract further stated that the scope of work was based on an initial inspection, and "changes to this Scope of Work, including changes in or to the rates, charges and time frames specified herein, may become necessary as the Work progresses." The Contract also provides that change order forms should be submitted in writing to LCM or its authorized representative.

The Contract's stated price term is as follows:

CONTRACT ESTIMATE: 10,500,000.00 USD

The above stated amount is considered to be a not to exceed price for work performed based upon currently known conditions, this is not a lump sum contract price and all invoicing will be governed by time and materials billing.

"[LCM]" agrees to pay "PAL" for the satisfactory completion of "PAL" work, the balance sum invoiced upon completion of the project, in accordance with this contract and payment terms as will be provided.

The Contract also stated that PAL would issue invoices to LCM "from time to time[.]"

According to PAL, it began work on September 16, 2017, and during the work, PAL "encountered previously unknown conditions which drastically enlarged PAL's workload and scope of work." Attached to PAL's response is LCM's June 19, 2020 "Applicant's First Appeal of FEMA's Adverse Determination

10

Memorandum" addressing FEMA's partial denial of some costs incurred from damage sustained during Hurricane Harvey. In the Memorandum, LCM wrote,

> . . . Hurricane Harvey inflicted devastation on the District's schools on a scope and scale (e.g. cost) that could not have been fathomed prior to the event. No one within the District had experienced a disaster such as Harvey, nor had anyone in the Facilities or Finance Departments managed a restoration project of remotely the same scale. Stated bluntly, the sheer magnitude of Harvey and the cost of the District's recovery process shocked the collective consci[ence].

The January 8, 2018 LCM Board of Trustees' meeting minutes attached to PAL's Response state, "PAL's original estimate was $10.5 million but now already exceeds $13 million with more to come." PAL attached to its Response a timeline of the project prepared by LCM's Assistant Superintendent, and this timeline reflects that, at the January 8, 2018 meeting, PAL representatives told the Board of Trustees that, because PAL was still receiving invoices from third parties, PAL did not have a total at that time. PAL's Response alleged that it issued its final invoices to LCM totaling $20,203,548.07 on January 24, 2018, and copies of the invoices are attached to PAL's Response. The LCM timeline attached to PAL's Response states that as of August 8, 2018, LCM had paid PAL $9,662,896.36. PAL alleged that it then submitted a written change order for the enlarged scope of work at LCM's request and "for FEMA's benefit[.]" PAL attached a copy of the change order to its Response, which states, in relevant part:

> JUSTIFICATION: The necessity of this work was driven by procedures and protocols provided from the Industrial Hygienist above

11

and beyond the initial known scope of work at the time the original contract amount was approved. In order to comply with these requirements substantially more labor, materials and equipment [were] required to safely return the facilities to operation.

1. Original Contract Amount:       10,500,000.00
2. New Contract Amount:         20,203,548.07
3. Net Change Amount:          9,703,548.07

According to PAL, when it submitted the change order to LCM, it "erroneously" referred to the change order as an "extension" to the original Contract, and the Assistant Superintendent subsequently told a third-party consultant that LCM did not believe an updated or amended contract was necessary. The LCM Board of Trustees' meeting minutes for August 13, 2018, state that, for FEMA to reimburse LCM for the additional scope of PAL's work, LCM needed to pay PAL first. In the LCM timeline PAL attached, LCM's Assistant Superintendent wrote,

> [] When all invoices were received, the total was $20,203,548.10. There has been no contract extension signed since the work has already been completed. The District is satisfied with the quality of the work that was done which resulted in clean, dry buildings that were ready to be reconstructed. All of the work that was performed by PAL should be eligible for reimbursement and should be obligated to the full 90% of the $20+million total. The District intends to pay PAL; however, at this point, due to cash flow issues, we have only made eight payments totaling $9,662,896.36 towards these invoices. We have only received $4.4 million from FEMA via an expedited project and are unable to get reimbursement on the remaining $5.2 million that we have paid due to the project not being versioned to obligate any additional funds. When we are able to be reimbursed for the additional funds we have paid, that will give us the cash flow we need to make additional payments.

12

In a Board of Trustees meeting on December 10, 2018, LCM's Assistant Superintendent told the Board that LCM had only received $4,775,750.10 from FEMA. LCM asked PAL to remain patient as it waited for additional funds from FEMA; however, PAL filed suit against LCM on December 12, 2018, in trial cause number D180501-C.

According to PAL, LCM continued to assure PAL that it was working to obtain additional funding from FEMA, and based on those assurances, PAL and LCM entered into a Rule 11 Agreement to toll limitations while the parties worked toward a resolution of PAL's claims. Under the tolling agreement: LCM agreed that the statute of limitations on PAL's claims was tolled for 24 months; PAL agreed to dismiss its lawsuit without prejudice; PAL agreed that if LCM paid the balance due before the statute of limitations tolled, that LCM would only be required to pay the unpaid balance and no interest, costs, or attorney's fees; and the 24 months of tolling would begin on the date the trial court signed an order dismissing the case. A copy of the tolling agreement attached to PAL's response shows that LCM's Superintendent signed the agreement for LCM. PAL also attached to its Response a copy of the trial court's order dismissing PAL's claims without prejudice in trial cause number D180501-C and signed by the trial court on October 25, 2019.

PAL's Response explains that it filed the current lawsuit (trial cause number 230198-C) against LCM for breach of contract and seeking damages of

13

$9,703,548.07 plus attorney's fees, expenses, and interest. According to PAL, LCM's governmental immunity is waived under section 271.152 of the Local Government Code because the parties' Contract for emergency services is written, was properly executed on LCM's behalf, and states the essential terms of the parties' agreement.

*(1) Properly executed written contract stating the essential terms.*

According to PAL, the parties' Contract for emergency services describes the parties' basic obligations, that is, "cleaning, remediation, and repair services in exchange for valuable consideration." Further, PAL argues that the Contract contains "several 'catch all' provisions[]" that acknowledge "unknowns and uncertainties" and provides for changes to the scope of PAL's work. PAL also argues that LCM's Plea did not specify any particular aspect of the work where the Contract would have required PAL to submit a change order or that constituted a deviation from the parties' initial understanding about the scope of work. In addition, PAL argues that the evidence reflects that PAL completed the work, that LCM acknowledged that it intended to pay PAL in full, and that LCM only challenged PAL's claim for payment after FEMA denied LCM's claim for reimbursement.

PAL argues that the Contract's price term must be construed in terms of the Contract as a whole, so that the "not to exceed" price must be considered together with the statement that the "not to exceed price for work performed [was] based upon

14

currently known conditions[]" and was "not a lump sum contract price[.]" In addition, PAL notes that the Contract also contemplates that changes to the scope of work would result in additional charges as the work progressed. And PAL argues that it completed the work, and that courts tend to construe an agreement as containing the essential terms where one of the parties has fully performed, citing *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 240 (Tex. 2016) ("The law favors finding agreements sufficiently definite for enforcement, 'particularly . . . where one of the parties has performed his part of the contract.'") (quoting *Tanenbaum Textile Co. v. Sidran*, 423 S.W.2d 635, 637 (Tex. App.—Dallas 1967, writ ref'd n.r.e.)).

PAL also argues that the Contract was properly executed because the LCM Board of Trustees passed a resolution declaring an emergency after Hurricane Harvey and granting the LCM District Superintendent (or designee) the authority to make contracts for repair or replacement of school facilities or property, consistent with section 44.0312(h) of the Texas Education Code. PAL asserts that, even though LCM argues there is no evidence that LCM approved a written change order for payment in excess of $10,500,000, that (1) LCM's Assistant Superintendent conceded that the alleged change order was "really [] just a statement[,]" and (2) any dispute over the scope of the contract or amount owed bears on the merits of the case and not jurisdiction, citing *Beaumont Independent School District v. LRG-Loss Recovery Group, LLC*, No. 09-22-00144-CV, 2023 Tex. App. LEXIS 3390, at **26-

15

27 (Tex. App.—Beaumont May 18, 2023, pet. denied) (mem. op.) (hereinafter "*BISD*").

*(2) Exhaustion of administrative remedies.*

According to PAL, neither Texas law nor the parties' agreement require PAL to exhaust administrative remedies before filing suit against LCM. PAL asserts that LCM cited to no statutory nor contractual administrative remedies that PAL was required to exhaust. PAL also argues that the current lawsuit does not arise from the administration of school laws, so that there are no administrative remedies for PAL to exhaust.

*(3) Statute of limitations.*

PAL first argues that limitations is an affirmative defense that does not implicate jurisdiction, but even assuming that limitations is jurisdictional, its Petition was timely under the parties' tolling agreement. According to PAL, the limitations period would ordinarily have begun to run on the issuance of the trial court's October 25, 2019 order granting PAL's nonsuit; however, the parties' tolling agreement provided that limitations was tolled for 24 months from the signing of that order. PAL asserts "[b]ecause the four-year limitations period of PAL's claims arising from the emergency services agreement was tolled from December 12, 2018 to October 25, 2021, only 362 days had elapsed when the limitations period began running again

16

on October 25, 2021[,]" or 24 months after the trial court dismissed PAL's first lawsuit.

In sum, PAL argues it has alleged sufficient jurisdictional facts, supported by evidence, that affirmatively demonstrate a waiver of LCM's governmental immunity under Chapter 271 of the Local Government Code.

The Trial Court's Order

After a hearing[4] on the Plea, the trial court signed an Order Denying Defendant's Plea to the Jurisdiction, stating "the plea lacks merit." LCM timely filed its notice of interlocutory accelerated appeal.

Issues

The District argues that the trial court erred by denying its plea to the jurisdiction for three reasons: (1) there is no properly executed agreement for work performed beyond the "not to exceed" contract price; (2) PAL failed to file suit within the statute of limitations, and the alleged Rule 11 Agreement to toll the statute of limitations is ineffective because it was not approved by the District's Board of Trustees but rather by the Superintendent alone; and (3) PAL failed to exhaust its administrative remedies—that is, it failed to present its claim to the District's Board of Trustees.

---

[4] The parties did not offer any additional evidence at the hearing.

17

Appellee PAL argues that the District's immunity was waived under Chapter 271 of the Local Government Code, that the District's statute-of-limitations argument does not affect jurisdiction, and that there were no administrative remedies that were required to be exhausted.

Standard of Review

The existence of subject-matter jurisdiction is a question of law that can be challenged by a plea to the jurisdiction. *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *See Miranda*, 133 S.W.3d at 226, 228; *Woodway Drive LLC v. Harris Cnty. Appraisal Dist.*, 311 S.W.3d 649, 651 (Tex. App.—Houston [14th Dist.] 2010, no pet.), *superseded by statute on other grounds as stated in Town & Country, L.C. v. Harris Cnty. Appraisal Dist.*, 461 S.W.3d 208, 212 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The trial court's review of a plea to the jurisdiction "generally mirrors the summary judgment standard." *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019) (citing *Sampson v. Univ. of Tex.*, 500 S.W.3d 380, 384 (Tex. 2016)).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve

18

the jurisdictional issues. *See Miranda*, 133 S.W.3d at 227. The movant must meet the summary-judgment standard of proof by conclusively demonstrating that the trial court lacks subject matter jurisdiction. *See id.* at 227-28. We credit as true all evidence favoring the nonmovant and draw all reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* at 228.

> If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

*Id.* at 227-28. "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

"If the Legislature elects to waive immunity by statute, it must do so by clear and unambiguous language." *Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 344 (citing Tex. Gov't Code Ann. § 311.034; *Tooke v. City of Mexia*, 197 S.W.3d 325, 332-33 (Tex. 2006)). Matters of statutory construction are questions of law that we review under a de novo standard of review. *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 700 (Tex. 2015); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). Statutory waivers of immunity are to be construed narrowly. *See Tex. Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 353 (Tex.

19

2013) (citing Tex. Gov't Code Ann. § 311.034). When construing a statute that purportedly waives immunity, we generally engage in a heavy presumption in favor of immunity and resolve ambiguities in favor of retaining immunity. *See Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 844 (Tex. 2009) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003)); *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 504 (Tex. App.—El Paso 2014, no pet.) ("There is a 'heavy presumption' in favor of immunity.") (quoting *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007)).

Governmental Immunity

Governmental units, including school districts, are immune from suit unless the State consents and waives immunity. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Miranda*, 133 S.W.3d at 224). Under Chapter 271, Subchapter I, the Legislature has expressly waived governmental immunity for certain contracts with a governmental entity. Tex. Loc. Gov't Code Ann. § 271.152. A public school district is a governmental entity under the statute. *See* Tex. Loc. Gov't Code Ann. § 271.151(3)(B); *see also El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 526 (Tex. 2020) ("Public school districts are generally entitled to governmental immunity from liability and suit.").

Section 271.151(2)(A) provides that, to constitute an effective waiver of governmental immunity under Chapter 271, a contract must be in writing, it must state the essential terms of the agreement, the contract must be for the provision of goods or services to the local governmental entity, and the contract must be "properly executed" on behalf of the governmental entity. *See* Tex. Loc. Gov't Code Ann. § 271.151(2)(A); *see also City of Hous. v. Williams*, 353 S.W.3d 128, 135 (Tex. 2011); *ICI Constr., Inc. v. Orangefield Indep. Sch. Dist.*, 339 S.W.3d 235, 239-40 (Tex. App.—Beaumont 2011, no pet.). Section 271.151 does not define "properly executed," but the Texas Supreme Court has explained that "a contract is *properly executed* when it is executed in accord with the statutes and regulations prescribing that authority." *Amex Props., LLC*, 602 S.W.3d at 532; *see also BISD*, 2023 Tex. App. LEXIS 3390, at *24.

## LCM's Arguments on Appeal

In its brief on appeal, LCM argues that the Contract lacked "essential terms," LCM has already paid PAL the contractually agreed upon amount, and the additional amount PAL claims to be due of $9,703,548.07 is not an amount stated in the parties' Contract, and it exceeds the not-to-exceed price of $10,500,000 expressly provided for in the Contract. LCM further argues that assignments given to PAL that deviated from the scope of work defined by the Contract would be considered a change order, and PAL did not submit a written change order to LCM for any amount over

$10,500,000, nor did the LCM Board of Trustees approve a change order for any amount exceeding $10,500,000. In other words, according to LCM, governmental immunity is not waived because: no Contract term required LCM to pay any amount exceeding $10,500,000; the LCM Board of Trustees did not approve a change order for an additional $9,703,548.07; the essential terms of the parties' Contract did not provide for any payment exceeding $10,500,000; and the Change Order that PAL presented to LCM for the excess amount owed was not properly executed, as required by section 271.151 of the Local Government Code. *See* Tex. Loc. Gov't Code Ann. § 271.151(2)(A).

PAL's Arguments on Appeal

In its brief on appeal, PAL argues that, despite its August 5, 2018 request for additional payment being titled "Change Order," the request also states that it is an "addendum" and represented work required by an industrial hygienist that was beyond the "initial known scope of work at the time the original contract amount was approved." PAL also references a "procurement narrative" or timeline prepared by LCM's Assistant Superintendent (excerpted *supra*) that states that LCM was satisfied with the quality of PAL's work, and it intended to pay PAL, however LCM had not yet been reimbursed by FEMA and lacked the funds to make any additional payment to PAL.

Essential Terms of the Agreement

For a written contract to be subject to Chapter 271, it must state "the essential terms of the agreement." *Campbellton Rd., Ltd. v. City of San Antonio*, 688 S.W.3d 105, 118 (Tex. 2024) (citing Tex. Loc. Gov't Code Ann. § 271.151(2)(A)). Chapter 271 does not define "essential terms." *See Williams*, 353 S.W.3d at 138. Courts consider each contract separately on a case-by-case basis to determine its essential terms. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

> An agreement's essential terms are those that parties would reasonably regard as "vitally important ingredient[s]" of their bargain. Whether particular terms are essential generally depends on the specific contract at issue. A contract must state its essential terms with "a reasonable degree of certainty and definiteness," sufficient to confirm that both parties actually intended to be contractually bound and to enable a court to understand and enforce the parties' obligation and provide an appropriate remedy when breached.

*Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 368-69 (Tex. 2019) (quoting *Fischer*, 479 S.W.3d at 237) (citations omitted). Whether there is a contract that includes essential terms is a question asked at the time of formation. *San Jacinto River Auth. v. City of Conroe*, 688 S.W.3d 124, 136 (Tex. 2024) (citing *Campbellton Rd., Ltd.*, 688 S.W.3d at 114-16).

The Texas Supreme Court has explained that the "essential terms" of a contract may include "[t]he names of the parties, property at issue, and basic obligations" as well as "the time of performance, the price to be paid, the work to be

done, and the service to be rendered[.]" *Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010) (citing *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006)); *see also ICI Constr., Inc.*, 339 S.W.3d at 239-40.

The parties do not dispute that they entered into a written agreement ("the Contract") on September 11, 2017, that identifies the contracting parties as PAL and LCM, and the District Superintendent signed the agreement on behalf of the District as authorized by an emergency resolution by the LCM Board of Trustees. The Contract includes a "Description of Services" that PAL was to perform. It also includes a "Contract Price" of $10,500,000 "based upon currently known conditions" and the price was "not a lump sum contract price[.]" The Contract lists the names of 4 schools in the LCM District as the "Project Location." We conclude that the Contract included essential terms sufficient to show that the parties intended to be contractually bound and for a court to understand and enforce the parties' obligations because the Contract here identified the parties, the work to be performed, the properties where PAL was to perform, and a price term. *See Vizant Techs., LLC*, 576 S.W.3d at 368-69.

We note that section 271.153(a)(2) provides that a contractor's damages may include "the amount owed for change orders *or additional work* the contractor is directed to perform by a local governmental entity in connection with the contract[.]"

Tex. Loc. Gov't Code Ann. § 271.153(a)(2) (emphasis added). We have previously explained that the scope of a contract, including the amount due and owed under the contract, may simply go to the merits of the claim and may not implicate jurisdiction. *See BISD*, 2023 Tex. App. LEXIS 3390, at **26-27.[5] LCM argues PAL cannot maintain its breach of contract claim for damages in excess of the $10,500,000 contractual cap unless there is a properly executed written amendment. Other courts have considered this kind of argument as nothing more than an argument that the contract claim will fail on the merits, and have concluded that even if true, it does not deprive a trial court of jurisdiction to hear the claim. *See City of El Paso v. High Ridge Constr., Inc.*, 442 S.W.3d 660, 672 (Tex. App.—El Paso 2014, pet. denied) (citing *Roma Indep. Sch. Dist. v. Ewing Constr. Co.*, No. 04-12-00035-CV, 2012 Tex. App. LEXIS 5968, at *9 (Tex. App.—San Antonio July 25 2012, pet. denied) (mem. op.)). We agree with this reasoning and find it consistent with precedent from our Court as explained in *BISD*. *See BISD*, 2023 Tex. App. LEXIS 3390, at **26-27. More importantly, we find this approach to be consistent with rulings from the

---

[5] Citing *City of Mason v. Blue Oak Eng'g, LLC*, No. 04-20-00227-CV, 2020 Tex. App. LEXIS 9908, at *7 & n.4 (Tex. App.—San Antonio Dec. 16, 2020, pet. denied) (mem. op.) ("As with the issue of scope, the issue of the amount [] that is 'due and owed' under the [] contract goes to the merits and does not implicate jurisdiction."); *Clear Creek Indep. Sch. Dist. v. Cotton Com., USA, Inc.*, 529 S.W.3d 569, 586 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (section 271.152's language does not suggest that the common law elements of breach of contract claim are jurisdictional).

Texas Supreme Court. *See San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 631 (Tex. 2020) (governmental immunity was waived where contractor sought damages it alleged were owed under the contract, even though the question of whether the governmental entity was required to pay an additional amount was still in dispute); *Bland*, 34 S.W.3d at 554 (a plea to the jurisdiction "does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction[]").

The purpose of a plea to the jurisdiction is to defeat an action without regard to whether the underlying claims have merit. *See BISD*, 2023 Tex. App. LEXIS 3390, at *26 (citing *Garcia*, 372 S.W.3d at 635). At this state of the litigation, a plaintiff's burden is to allege facts demonstrating jurisdiction, and it need not prove its claims or damages. *See id.* On this record, and in accordance with *San Antonio River Authority* and *Bland*, we conclude that PAL has sufficiently alleged an amount due and owed under the parties' Contract, but because we do not address the merits of the claims at this stage of the litigation, we do not decide the scope of the parties' Contract nor what amount, if any, is due. *See San Antonio River Auth.*, 601 S.W.3d at 631; *Bland*, 34 S.W.3d at 554; *see also* Tex Loc. Gov't Code Ann. § 271.153(a)(1); *BISD*, 2023 Tex. App. LEXIS 3390, at *26. We overrule LCM's first issue. *See* Tex. Loc. Gov't Code Ann. § 271.151(2)(A).

LCM argues that the statute of limitations had run before July 13, 2023, when PAL filed its second lawsuit, from which LCM now appeals. According to LCM, the parties' purported Rule 11 tolling agreement was not effective to toll the statute of limitations because it was signed by the superintendent for the school district only, and the Board of Trustees never approved the tolling agreement. According to LCM, school districts are not responsible for the acts of its employees or individual trustees absent actual responsibility by the Board of Trustees, citing *Davis v. Duncanville Independent School District*, 701 S.W.2d 15, 17 (Tex. App.—Dallas 1985, writ denied). In its Reply brief, LCM argues that a school district may only act through its board of trustees, pursuant to section 11.151(b) of the Texas Education Code. *See* Tex. Educ. Code Ann. § 11.151(b).[6] LCM further argues that "[w]hatever delegation of authority [to the superintendent] might have existed for purposes of certain contracting, it [] would not have extended to waive a legal defense of limitations."

---

[6] Section 11.151(b) of the Education Code provides:
Except as provided by Sections 39A.201 and 39A.202, the trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district. All powers and duties not specifically delegated by statute to the agency or to the State Board of Education are reserved for the trustees, and the agency may not substitute its judgment for the lawful exercise of those powers and duties by the trustees.
Tex. Educ. Code Ann. § 11.151(b).

PAL argues that the tolling agreement operates as a contractual waiver of the statute of limitations, citing *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 533 (Tex. 2019). According to PAL, limitations was tolled from December 12, 2018 (when it filed its initial lawsuit against LCM) until October 25, 2021 (when the trial court dismissed the initial lawsuit), and only 362 days had elapsed when the limitations period began to run again on October 25, 2021. In addition, PAL argues that LCM offered no legal support for its position that the statute of limitations is jurisdictional and relevant to whether governmental immunity is waived.

Section 311.034 of the Texas Government Code states, in relevant part, that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." Tex. Gov't Code Ann. § 311.034. The Texas Supreme Court has held that, under section 311.034, the statute of limitations is a "statutory prerequisite," and a suit against a governmental entity must be brought before the limitations period expires. *See Tex. State Univ. v. Tanner*, 689 S.W.3d 292, 296 (Tex. 2024); *see also City of Hous. v. Meka*, 697 S.W.3d 656, 657 (Tex. 2024). Therefore, we agree that the statute of limitations is jurisdictional, and we must examine whether PAL timely filed its Petition in the underlying lawsuit. We review a challenge to limitations as a matter of law. *Webb v. Crawley*, 590 S.W.3d 570, 583 (Tex. App.—Beaumont 2019, no pet.).

28

Here, LCM does not argue that the statute of limitations ran prior to the initial lawsuit. Rather, LCM contends the tolling agreement was not enforceable because it was never approved by the District's Board of Trustees. An agreement to toll the statute of limitations must be specific and for a reasonable time. *See Godoy*, 575 S.W.3d at 533. LCM did not challenge the specificity nor reasonableness of the tolling agreement in the trial court, nor does it do so on appeal.[7] LCM only argues that the superintendent did not have the authority to bind the school district because the Board of Trustees had not voted to approve the agreement.

The document that includes the purported tolling agreement is set forth in a Rule 11 Agreement as follows:

RULE 11 AGREEMENT

*RE: Case No. D180501-C; PAL Environmental Safety Corp. vs. Little Cypress-Mauriceville Consolidated Independent School District; In the 260th Judicial District of Orange County, Texas*

This letter will confirm that the parties have reached the following agreement in connection with the above-referenced case:

1. PAL Environmental Safety Corp. ("PAL") will dismiss the above-referenced lawsuit, without prejudice, within three (3) business days of this agreement being fully executed by all parties;

---

[7] To be effective, a Rule 11 agreement must be written, signed, and filed with the court. *Padilla v. La France*, 907 S.W.2d 454, 464 (Tex. 1995). Although the appellate record does not include evidence that the parties' Rule 11 agreement in this case was filed with the trial court, LCM does not challenge that point on appeal, nor did it do so in the trial court.

29

2. PAL agrees that if payment of the unpaid balance which forms the subject of the above-referenced suit is paid before the statute of limitations is tolled, as set forth in Paragraph 3, Little Cypress-Mauriceville Consolidated Independent School District ("LCM") will only be required to pay the unpaid balance, and PAL waives all interest, costs, and attorney's fees. If LCM fails to pay the unpaid balance which forms the subject of the above-referenced suit, and a suit must be re-filed by PAL, PAL retains the right to pursue interest, costs, and attorney's fees.

3. LCM agrees the statute of limitations is tolled for 24 months on the claim of PAL that is the subject of the above-referenced lawsuit. The 24 months of tolling begins on the date the Court signs an order dismissing the above-referenced case. This tolling agreement is to ensure that if LCM does not pay PAL for the work which forms the subject of the above-referenced lawsuit, and PAL must re-file suit on the subject claim, the 24 months that is tolled will not be counted against the limitation period; and

4. LCM agrees to hire PAL to perform additional work necessitated by Tropical Storm Imelda.

If the above accurately describes the agreement, please sign and have PAL sign where indicated and return this letter to me. I will have LCM sign and, thereafter, file it with the Court.

Sincerely,
George B. Barron
Attorney for Defendant

The letter is dated October 4, 2019, is on George Barron's letterhead, and is signed by Barron, who was at that time counsel for *defendant LCM*. The letter is also signed by Stacey Brister, Superintendent for LCM, Joseph Annarumma, VP of Finance for PAL, and Kristie Johnson, an attorney for PAL. On October 25, 2019, having

considered PAL's Motion to Non-Suit, the trial court signed an order dismissing PAL's lawsuit without prejudice.

An attorney serves as an agent for his client. *See Boozer v. Fischer*, 674 S.W.3d 314, 326 (Tex. 2023); *Dow Chem. Co. v. Benton*, 357 S.W.2d 565, 567 (Tex. 1962) (explaining that the attorney-client relationship is one of principal and agent). "The most important presumption of agency is that the agent acts in accordance with the wishes of the principal." *Breceda v. Whi*, 187 S.W.3d 148, 152 (Tex. App.—El Paso 2006, no pet.). Therefore, the acts of an attorney generally bind the client. *See id.* (citing *Tex. Emp. Ins. v. Wermske*, 349 S.W.2d 90, 93 (Tex. 1961). Texas courts presume that an attorney has the client's authority to agree to enter a settlement agreement, although the assumption of the attorney's authority is rebuttable. *See id.*; *see also Carburante Land Mgmt., LLC v. Hopkins*, No. 07-10-00398-CV, 2012 Tex. App. LEXIS 4409, at *17 (Tex. App.—Amarillo June 1, 2012, no pet.) (mem. op.); *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 300 (Tex. App.—Austin 2000, pet. denied) ("Generally, a court will indulge every reasonable presumption to support a settlement agreement made by a duly employed attorney."). The presumption that an attorney possesses express authority to enter into a settlement agreement on behalf of the client may be rebutted with evidence to the contrary, but the movant may not use the presumption to shift the burden of raising a fact issue to the non-movant. *See Chavez v. Kan. City S. Ry. Co.*, 520 S.W.3d 898, 900 (Tex.

31

2017). We apply the same presumption to this Rule 11 Agreement. *See, e.g., CIG, L.L.C. v. Panjwani*, No. 09-14-00163-CV, 2016 Tex. App. LEXIS 2543, at *6 (Tex. App.—Beaumont Mar. 10, 2016, no pet.) (mem. op.) ("[A]n attorney may execute an enforceable Rule 11 agreement on his client's behalf.") (citing *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 691 (Tex. App.—Houston [14th Dist.] 2011, no pet.)). To rebut the presumption that an attorney had actual authority to enter into a Rule 11 agreement, the record must contain affirmative proof that the client did not authorize its attorney to enter into the settlement, such as an affidavit from the client to that effect. *See id.*; *Phillips v. Phillips*, No. 14-12-00897-CV, 2013 Tex. App. LEXIS 15275, at *8 (Tex. App.—Houston [14th Dist.] Dec. 19, 2013, no pet.) (mem. op.); *City of Roanoke v. Westlake*, 111 S.W.3d 617, 629 (Tex. App.—Fort Worth 2003, pet. denied).

> LCM argued in the trial court and in this appeal that
>
> [w]hile Mr. Barron, the District's prior counsel, undoubtedly with the best of intentions, signed the agreement to obtain a non-suit of PAL's previously filed lawsuit, this agreement could only effectively prevent Mr. Barron from raising a limitations *defense*. He could not unilaterally dispense with the application of the limitations bar as a matter of law. He could only agree not to raise it in *his* defense of the District.

LCM cites no legal authority in support of this assertion. *See* Tex. R. App. P. 38.1(i) (requiring an appellate brief to cite to the record and to applicable authority). And we are aware of no legal authority to support this argument.

32

LCM has not made the argument or alleged that its previous attorney, Mr. Barron, was not authorized to enter into the tolling agreement on its behalf, nor has it offered evidence to the contrary that would conclusively show counsel was *not* authorized. *See Chavez*, 520 S.W.3d at 900. That said, based on the record before us, the trial court may have reasonably concluded that a fact question exists as to whether counsel was authorized to execute the agreement on behalf of its client LCM and whether the Rule 11 Agreement was effective to toll the statute of limitations, and applying all reasonable inferences in favor of PAL, the nonmovant. Accordingly, we overrule LCM's second issue. *See Hopkins*, 2012 Tex. App. LEXIS 4409, at *17; *Breceda*, 187 S.W.3d at 152; *Ebner*, 27 S.W.3d at 300; *see also Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (applying the standard of review for summary judgment, we indulge all reasonable inferences in favor of the nonmovant).

Exhaustion of Administrative Remedies

In its third issue LCM argues that immunity is not waived because PAL failed to exhaust administrative remedies before filing its Original Petition in the underlying lawsuit. In its Plea, LCM argued in the trial court that a contractor or vendor claiming nonpayment by a school district must exhaust its administrative remedies before Texas courts are vested with jurisdiction to review the complaint, citing *Kolterman v. Underream Piling Co.*, 563 S.W.2d 950, 955 (Tex. App.—San

33

Antonio 1997, writ ref'd n.r.e.). LCM's Plea does not specify what PAL's administrative remedies were; however, the Plea asserts that PAL did not allege it presented its claim to the school board for resolution. The record reflects that PAL issued a "Change Order" on August 5, 2018, for the amount LCM had not paid, and LCM's Plea notes that LCM's Board of Trustees chose not to execute the proposed change order at its August 13, 2018 meeting.

The Texas Supreme Court has explained that "a vendor's claim for breach of a contract to provide a school services [] does not complain of a violation of Texas school laws[]" that would require an appeal to the Commissioner of Education prior to filing suit. *See Fort Worth Indep. Sch. Dist. v. Serv. Emp. Redev.*, 243 S.W.3d 609, 610 (Tex. 2007) (noting that former section 11.13(a) and current section 7.057(a) of the Texas Education Code provide for an appeal to the Commissioner of Education of disputes over school district actions "arising under the school laws of Texas[]" prior to filing a lawsuit); *see also Columbus Indep. Sch. Dist. v. Five Oaks Achievement Ctr.*, 197 S.W.3d 384, 385 (Tex. 2006) (per curiam) (same); *Spring Branch Indep. Sch. Dist. v. Metalab Equip. Co.*, 381 S.W.2d 48, 48 (Tex. 1964) (per curiam) (explaining that a claim for breach of a contract to buy laboratory equipment does not relate to the administration of school laws and requires exhaustion of remedies to school authorities prior to filing a lawsuit). Similarly, because the Contract between PAL and LCM does not allege a violation of Texas school laws,

34

we conclude that PAL was not required to exhaust administrative remedies by seeking relief from the Commissioner of Education before filing suit. *See Serv. Emp. Redev.*, 243 S.W.3d at 610. We overrule Appellant LCM's third issue on appeal.

Having overruled all of LCM's issues, we affirm the trial court's Order Denying Defendant's Plea to the Jurisdiction.

AFFIRMED.


LEANNE JOHNSON
Justice

Submitted on November 13, 2024
Opinion Delivered January 16, 2025

Before Johnson, Wright and Chambers, JJ.